IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| KULL AUCTION & REAL ESTATE CO., INC., <br><br> Petitioner, <br><br> v. <br><br> WILLIAM MILLER, <br> Director of Industry Operations, <br> Kansas City Field Division <br> Bureau of Alcohol, Tobacco, <br> Firearms & Explosives, <br><br> Respondent. | Case No. |

## VERIFIED PETITION FOR JUDICIAL REVIEW

Petitioner, Kull Auction & Real Estate Co., Inc., files this Petition for Judicial Review of the Bureau of Alcohol, Tobacco, Firearms & Explosives' revocation of Petitioner's license as a dealer of firearms, dated November 21, 2023. Pursuant to Fed. R. Civ. P. 65(a), Petitioner requests that the Court grant injunctive relief in its favor, staying the revocation date of Petitioner's federal firearms license so that Petitioner may continue operating pending judicial review.

### INTRODUCTION

1. This is a petition for *de novo* judicial review of the revocation of Petitioner's Federal Firearms License ("FFL"). This action is timely under 18 U.S.C. § 923(f)(3) and its related regulations.

2. Petitioner also requests injunctive relief to stay the effective revocation date of Petitioner's FFL and to allow Petitioner to operate in full until the Court's *de novo* review is complete.

1

3. ATF cannot establish that Petitioner has committed even one willful violation of the law, which must be proven to revoke a FFL. Moreover, as set forth in more detail in this Petition and in the declarations filed in support of this Petition, Petitioner faces imminent irreparable harm from Respondent's unjustified revocation of its FFL. Specifically, the revocation of Petitioner's FFL, unless temporarily restrained, will result in the closing of Petitioner's operations, putting Petitioner out of business immediately, causing Petitioner to fire all its employees, and ending Petitioner's existence prior to the relief sought in this case.

## PARTIES

4. Petitioner is a Kansas corporation with its principal place of business in Topeka, Kansas. Daniel D. Kull is Petitioner's President and a Responsible Person under the Petitioner's FFL. Since 2005, Petitioner has had a Type 01 FFL, Dealer in Firearms Other Than Destructive Devices.

5. Respondent William Miller ("DIO Miller") is the Director of Industry Operations ("DIO") of the Kansas City Field Division of the ATF and is sued in his official capacity. Petitioner is within the jurisdiction of the Kansas City Field Division, and DIO Miller has authority over revocation of licenses for that Division.

## JURISDICTION AND VENUE

6. 28 U.S.C. § 1331 authorizes this Court to hear this action, as it arises under the Constitution and the laws of the United States, including 18 U.S.C. § 923(f)(3) and its related regulations.

7. Venue is proper in the United States District Court for the District of Kansas, because Petitioner's principal place of business is in Topeka, Kansas.

**FACTS**

**A.     The Petitioner's business, licensing, and inspection history.**

8.      Petitioner is a firearms dealer located at 201 SE 59th Street, Topeka, Kansas, holding FFL license No. 5-48-177-01-6H-01060.

9.      Petitioner is a long-time small community business that was founded in 1988 and offers professional auctioneering services and appraisals for firearms and real estate. Petitioner's auctions attract buyers and sellers throughout the United States.

10.     The vast majority of Petitioner's auctioneering services (over 98%) is the auctioning of firearms. Without an FFL, Petitioner cannot operate its business.

11.     Petitioner's services are recognized nationwide, despite operating with only a small number of employees.

12.     Petitioner maintains a close working relationship with local law enforcement, namely the Shawnee County Sheriff's Office, where it has assisted in the identification and destruction of firearms that have been altered or defaced.

13.     Since 1989, the U.S. Trustee's Office has retained Mr. Kull and Petitioner on numerous occasions to provide auctioneering services and expert testimony regarding the valuation of property of debtors' estates, including the valuation of firearms and business operations, in bankruptcy proceedings before the U.S. Bankruptcy Court.

14.     Petitioner currently maintains an inventory of approximately 1,275 firearms at its location in Topeka, Kansas, and 99% of those firearms are subject to various consignment agreements whereby Petitioner maintains contractual fiduciary obligations to the consigners to liquidate the firearms subject to such agreements.

3

15. ATF first issued an FFL to Petitioner in 2005. Subsequently, ATF conducted compliance inspections of Petitioner in 2006, 2007, 2011, 2012, 2013, and 2018.

**B.  Petitioner's compliance policies and procedures.**

16. Mr. A. Kurt Young has led Petitioner's compliance program since its FFL was issued in 2005. Over the years, Mr. Young has stayed abreast of changes in ATF's compliance regulations and has communicated those changes to Petitioner's employees through frequent email and other communications.

17. In addition, Petitioner has developed a close working relationship with the Shawnee County Sheriff's Office, as noted above. This policy was instituted due to Petitioner's unique business structure that results in an inventory of firearms that are nearly all subject to consignment agreements, and therefore require individualized inspection of each firearm received.

18. As a result of this policy, Petitioner (working in conjunction with the Shawnee County Sheriff's Office) has facilitated the destruction of several illegal firearms.

19. In 2019, Petitioner purchased a software program that provides Petitioner the capability to utilize digital ATF Form 4473's. The program was put in use upon purchase and was used for the majority of Petitioner's transactions. In 2023, Petitioner ceased using paper for any transactions so now all transactions are digital. This program has been instrumental in reducing the number of clerical errors that are common with completing ATF Form 4473's in real time.

20. Additionally, Petitioner requires two employees to complete independent reviews of each ATF Form 4473 before it is filed in accordance with ATF's regulations to guard against errors.

21. Petitioner's scheduling and firearms pick-up policies are also geared toward compliance. Petitioner has implemented a scheduling program, due to the unique nature of their

4

firearms auction business, which requires customers to schedule an appointment to retrieve firearms they purchased at auction. Petitioner requires each appointment to be scheduled for a fifteen (15) minute block and only one customer is allowed to be completed during that appointment.

22. Petitioner also conducts an annual inventory of its firearms to ensure accuracy in its federally mandated Acquisition and Disposition Book ("A&D Book"). This process takes approximately one week to complete because Petitioner's inventory can range between 1,500 and 3,000 firearms at any point in time; however, it has been instrumental in reducing clerical errors in Petitioner's A&D Book.

23. In mid-2022, Mr. Young attended a National Instant Criminal Background Check System ("NICS") seminar provided by the FBI in Springfield, Missouri. Mr. Young utilized the information garnered from that seminar to provide a workshop with Petitioner's staff.

**C.     The 2023 inspection and ATF actions to revoke the Petitioner's license.**

24. On May 22, 2023, the ATF initiated a firearms compliance inspection at Petitioner's business premises. ATF conducted a closing conference and issued a "Report of Violations" on June 7, 2023 that identified violations of the Gun Control Act (the "GCA"). Petitioner reviewed the Report of Violations with ATF personnel and provided responses to those violations at a closing conference on June 15, 2023.

25. The firearms compliance inspection conducted in May 2023 covered transactions by Petitioner from May 21, 2022 through May 21, 2023.

26. During the time period covered by the firearms compliance inspection, Petitioner conducted 1,646 transactions based on a review of Petitioner's A & D Book.

27. In the last five years, Petitioner has engaged in an average of approximately 3,000 firearms transactions each year and has estimated that it has conducted over 55,000 transactions since 2005.

28. On July 7, 2023, ATF issued a Notice to Revoke, Suspend or Impose a Civil Fine, ATF E-Form 4500 (5300.4) to Petitioner ("Notice to Revoke"). A copy of the Notice to Revoke is attached hereto as **Exhibit A**.

29. The Notice to Revoke found a total of five (5) violations in support of the ATF's decision to revoke Petitioner's FFL. Based upon the total transactions during the relevant time period, the ATF initiated the license revocation proceeding based on errors found in less than one-half of one percent of Petitioner's total transactions.

30. On July 20, 2023, Petitioner timely requested a hearing on the Notice to Revoke.

31. DIO Miller presided over the hearing for the Notice to Revoke on September 26, 2023. DIO Miller received evidence from the Government, represented by Jordan Bergus, Esq. ATF Industry Operations Investigator ("IOI") Christopher Porta was present at the hearing for the purpose of presenting evidence on behalf of the ATF.

32. Petitioner presented evidence on its behalf at the hearing.

33. Because the hearing is not governed by the Administrative Procedures Act, Petitioner had no right to discovery, and it had no subpoena power or other ability to compel witnesses.

34. During the hearing, the Government introduced evidence of Petitioner's alleged willful violations of 18 U.S.C. § 922(t) and 18 U.S.C. § 923(g)(3)(A), as set forth below in more detail.

35. An FFL may be revoked only if the licensee has "willfully" violated the GCA or any rule or regulation prescribed pursuant to the GCA. 18 U.S.C. § 923(e). Courts have interpreted "willfully" to include plain indifference to known legal obligations. *See Borchardt Rifle Corp. v. Cook*, 684 F.3d 1037, 1042-43 (10th Cir. 2012).

36. Petitioner acknowledged that the above-referenced violations occurred and took responsibility for these errors. The evidence in this case, however, demonstrates that there was no willful violation of any statutory or regulatory provision.

37. On November 21, 2023, DIO Miller issued a Final Notice of Denial of Application, Revocation, Suspension and/or Fine of Firearms License, ATF E-Form 5300.13 ("Final Notice"), revoking Petitioner's FFL. A copy of the ATF's Final Notice is attached hereto as **Exhibit B**.

38. In the Final Notice, DIO Miller made several "findings and conclusions" with respect to the alleged willful violations of the Act by Petitioner. Ultimately, DIO Miller based his revocation decision on four (4) violations:

    a. On three (3) occasions, Petitioner transferred a firearm to an unlicensed person without first contacting the National Instant Criminal Background Check System ("NICS"), in violation of 18 U.S.C. § 922(t) and 27 C.F.R. § 478.102; and

    b. On one (1) occasion, Petitioner failed to timely and/or accurately report the sale or other disposition of two or more pistols and/or revolvers during any five consecutive business days to an unlicensed person, in violation of 18 U.S.C. § 923(g)(3)(A) and 27 C.F.R. § 478.126a.

39. Petitioner's mistakes were neither willful nor the result of plain indifference to the statutory or regulatory requirements set forth in the GCA.

40. Three of the violations forming the basis of revocation resulted from an employee researching the law and drawing the wrong conclusion about whether to accept out-of-state concealed weapons permits. One violation occurred because Petitioner's employees, working late at night, decided to complete an ATF form the next morning then forgot to do so.

41. When all evidence is properly considered, Petitioner has demonstrated a long history of conscientious compliance with federal firearms laws, has made appropriate efforts to comply with the law throughout its 18-year history, and has never willfully violated the law.

**D.      The Government's "Zero Tolerance" Policy.**

42. The ATF's actions in this case arise out of the "Zero Tolerance" policy announced by the Biden administration in 2021.

43. On June 23, 2021, the Biden administration announced a Gun Crime Prevention Strategy that included focusing on ATF's Industry Operations conducting compliance inspections of FFLs aimed at further identifying licensees who commit willful violations of the GCA.

44. Pursuant to the Act, ATF's authority to revoke a license is limited to when an FFL willfully violated the GCA or its implementing rules and regulations.

45. According to the strategy laid out by the Government, each of the following qualifying violations which impact public safety will result in ATF issuing a notice of revocation, absent extraordinary circumstances:

    a. Refusal to allow an IOI to conduct an inspection;

    b. Transferring a firearm to a prohibited person;

    c. Failing to conduct a required background check;

    d. Falsifying records; and

    e. Failing to respond to a trace request.

46. The only one of the five above criteria implicated in this case is the "Failure to conduct a required background check". In this regard, the Government states that because Petitioner accepted an out-of-state CWP, it failed to conduct a background check. This is technically correct, in that the regulations require a NICS background check unless the CWP is issued by the state in which the firearm is purchased. Significantly, however, the Government presents no evidence that the three persons for whom out-of-state CWPs were accepted would not have passed a background check or were otherwise prohibited from purchasing a firearm.

47. Revocation proceedings under the Zero Tolerance policy have skyrocketed.

48. In fiscal year 2021 (ending on September 30, 2021), there were 6,643 ATF inspections of FFLs. Those inspections resulted in 31 license revocation proceedings and 149 warning conferences.[1]

49. By comparison in fiscal year 2023 (ending on September 30, 2023), there were 7,186 ATF inspections of FFL holders. Those inspections resulted in 153 license revocation proceedings and 138 warning conferences, a 500% increase in license revocation proceedings with a similar number of inspections.[2]

50. Nothing in the Zero Tolerance Policy obviates the requirement that the Government prove that violations were willful. Nor could it, because the willfulness standard is set by statute.

E.   **Effect of Revocation on Petitioner's Business**

51. If Petitioner's FFL is revoked, its business will cease operation and all employees will be fired. Simply put, Petitioner cannot operate without an FFL and if the FFL is revoked, the business ceases to exist.

---

[1] Bureau of Alcohol, Tobacco and Firearms, *Firearms Compliance Inspection Results* (Dec. 14, 2023), https://www.atf.gov/firearms/firearms-compliance-inspection-results.
[2] *Id.*

52. Notwithstanding the drastic effects of revocation, the Final Notice made the revocation effective within fifteen (15) days.  Meanwhile, the statute allows a licensee sixty (60) days to file an appeal to the United States District Court.

53. Considering the potential permanent loss of its business, Petitioner through counsel submitted a Request for Stay of the Revocation of the License for the duration of all appeals pursuant to 18 U.S.C. § 923(f)(3) and 27 C.F.R. § 478.78.

54. DIO Miller issued a stay on December 4, 2023.  However, the stay only extends the final revocation date for thirty (30) days, to January 12, 2024, and prohibits Petitioner from acquiring firearms.  The effect of DIO Miller's stay is to prohibit Petitioner from operating its business effectively and to close the business on January 12, 2024.

55. DIO Miller's Limited Stay of Revocation is attached, and herein incorporated, as **Exhibit C**.

56. At no time has the ATF found Petitioner to be engaged in nefarious practices or to be a threat to public safety.  To the contrary, Petitioner has a close working relationship with local law enforcement and has been operating its business for six months since the ATF found violations that it contends are willful.

57. Moreover, Mr. Kull and Petitioner have cooperated and worked with the U.S. Trustee's Office to assist in bankruptcy proceedings since the late 1980s, effectively partnering with the federal judiciary in furtherance of its constitutionally mandated obligation to administer the United States Bankruptcy Code.

## COUNT ONE
## Unauthorized Revocation of the Federal Firearms License

58. Petitioner incorporates Paragraphs 1-57 herein by reference.

59. 18 U.S.C. § 923(f)(3) provides that the United States District Court for the district of the principal place of business of the Petitioner shall have jurisdiction to hear complaints for a *de novo* judicial review of the Attorney General's findings regarding the revocation of a firearms license.

60. This Petition is timely filed within sixty (60) days of receipt by Petitioner of the Final Notice.  *See* 18 U.S.C. § 923(f)(3).

61. Petitioner seeks *de novo* judicial review pursuant to 18 U.S.C. § 923(f)(3) of all factual and legal issues by this Court pertaining to ATF's revocation of its firearms license.

62. The finding and conclusions of DIO Miller with respect to Petitioner are erroneous and are not supported by the evidence.

63. None of the violations on which DIO Miller based his decision were willful.  To the contrary, the violations were inadvertent and occurred despite Petitioner's efforts to comply with the law.

64. The action of the ATF in revoking Petitioner's FFL is in violation of federal law and without authorization, and a *de novo* judicial review will conclude that the Petitioner at no time "willfully" violated the law.

## COUNT TWO
## Recovery of Attorneys' Fees Pursuant to Gun Control Act

65. Petitioner incorporates Paragraphs 1-64 herein by reference.

66. The Gun Control Act provides in 18 U.S.C. § 924(d)(2)(B) for payment of the prevailing party's attorneys' fees resulting from ATF's actions under the Gun Control Act when such actions are found to be without foundation.

67. The revocation of Petitioner's federal firearms license was without foundation.

68. Upon resolution of this matter in favor of Petitioner, it is entitled to attorneys' fees under the foregoing statute.

## COUNT THREE
## Attorneys' Fees - EAJA

69. Petitioner incorporates Paragraphs 1-68 herein by reference.

70. The Equal Access to Justice Act was designed to remove financial obstacles to make access to justice available and affordable for those who have claims against the United States government. *See* 28 U.S.C. § 2412(d)(1)(A).

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

71. The revocation of Petitioner's federal firearms license was without substantial justification.

72. Upon resolution of this matter in Petitioner's favor, it is entitled to attorneys' fees under 28 U.S.C. § 2412(d)(1)(A).

## COUNT FOUR
## Request for Temporary Restraining Order and Preliminary Injunction

73. Petitioner incorporates Paragraphs 1-72 herein by reference.

74. A preliminary injunction should be entered because:

    a. Petitioner is likely to succeed on the merits because the ATF has applied the wrong legal standard for willfulness as a matter of law and the facts negate any inference of willfulness or plain indifference to the statutory and regulatory requirements prescribed by the Act;

    b. Petitioner will suffer irreparable harm—the closing of its business—in the absence of preliminary relief;

    c. The threatened injury to Petitioner outweighs the "injury" the ATF will suffer under preliminary injunctive relief. The threated injury to Petitioner, in that its existence will be terminated while judicial review is pending, is substantial and irreparable. In contrast, there is virtually no potential injury the to ATF and U.S. Government if Petitioner remains in business while judicial review is pending; and

    d. An injunction is in the public interest.

75. The purpose of a preliminary injunction is to preserve the relative positions of the parties until a trial on the merits can be held and, given this limited purpose and given the haste that is often necessary if those positions are to be preserved, Petitioner is not required to provide its case in full at the preliminary injunction stage.

WHEREFORE, Kull Auction & Real Estate Co., Inc. respectfully requests that this Court:

1. Enter a temporary restraining order and preliminary injunction prohibiting ATF from revoking Petitioner's Federal Firearms License and allowing Petitioner to conduct its

13

business without restriction during the entire pendency of this *de novo* review and any subsequent proceedings;

2. Accept and review the complete record of proceedings related to the license revocation and application denial, including DIO Miller's recommendations;

3. Allow discovery and supplementing of the factual record and legal arguments by Petitioner prior to conducting *de novo* review;

4. Conduct a *de novo* review and hearing on the underlying facts and DIO Miller's decision to revoke Petitioner's Federal Firearms License;

5. Conclude DIO Miller erred, did not have adequate grounds, and, thus, was unauthorized to revoke Petitioner's Federal Firearms License;

6. Order the DIO to withdraw the license revocation; and

7. Award such other relief, including costs and attorneys' fees, as this Court deems appropriate.

Respectfully submitted,

s/ *Greg A. Drumright*
Greg A. Drumright     KS #20743
MARTIN, PRINGLE, OLIVER,
WALLACE & BAUER, L.L.P.
645 E. Douglas, Suite 100
Wichita, Kansas 67202
Tele: (316) 265-9311
Fax:  (316) 265-2955
gadrumright@martinpringle.com

Samuel P. Heaney     KS #26399
MARTIN, PRINGLE, OLIVER,
WALLACE & BAUER, L.L.P.
9401 Indian Creek Parkway
Building 40, Suite 1150
Overland Park, KS 66210
Tele: (913) 491-5500
Fax:  (913) 491-3341
spheaney@martinpringle.com

14

Camden R. Webb (*pro hac vice* to be submitted)
WILLIAMS MULLEN
301 Fayetteville St., Suite 1700
Raleigh, NC 27601
Tele: (919) 981-4021
Fax:  (919) 981-4300
crwebb@williamsmullen.com

John G. Tamasitis (*pro hac vice* to be submitted)
WILLIAMS MULLEN
1230 Main Street, Suite 330
Columbia, SC 29201
Tele: (803) 567-4617
Fax:  (803) 567-4601
jtamasitis@williamsmullen.com

ATTORNEYS FOR PETITIONER

I, Daniel D. Kull, owner and President of Kull Auction & Real Estate Co. Inc., hereby verify that I have reviewed the foregoing Petition and the statements contained are true and correct to the best of my information and knowledge.

Dated this 20th date of December, 2023.

_____
DANIEL D. KULL

Sworn to and subscribed before me this, the 20 day of Dec, 2023.

_____
Notary Public

My Commission expires:

9-12-27

(Notarial stamp or seal)

Roberta B Haflich
Notary Public
State of Kansas
My Appointment Expires 9-12-27

16

104148114.4