**U.S. Department of Justice**
Bureau of Alcohol, Tobacco, Firearms and Explosives

**Final Notice of Denial of Application, Revocation Suspension and/or Fine of Firearms License**

In the matter of:

☐ The application for license as a/an _____, filed by:

or

☑ License Number 5-48-177-01-6H-01060 as a/an

Dealer in Firearms Other Than Destructive Devices , issued to:

Name and Address of Applicant or Licensee *(Show number, street, city, state and Zip Code)*
Kull Auction & Real Estate Co Inc
201 SE 59th Street
Topeka, Kansas 66619

Notice is Hereby Given That:

☐ A request for hearing pursuant to 18 U.S.C. § 923(f)(2) and/or 922(t)(5) was not timely filed. Based on the findings set forth in the attached document, your

  ☐ license described above is revoked pursuant to 18 U.S.C., 923(e), 922(t)(5) or 924(p), effective:

    ☐ 15 calendar days after receipt of this notice, or  ☐ _____.

  ☐ license is suspended for _____ calendar days, effective _____, pursuant to 18 U.S.C. § 922(t)(5) or 924(p).

  ☐ licensee is fined $ _____, payment due: _____, pursuant to 18 U.S.C. § 922(t)(5) or 924(p).

☑ After due consideration following a hearing held pursuant to 18 U.S.C. § 923(f)(2) and/or 922(t)(5), and on the basis of findings set out in the attached copy of the findings and conclusions, the Director or his/her designee concludes that your

  ☐ application for license described above is denied, pursuant to 18 U.S.C., 923(d).

  ☐ application for renewal of license described above is denied pursuant to 18 U.S.C. 923(d), effective:

    ☐ 15 calendar days after receipt of this notice, or  ☐ _____.

  ☑ license described above is revoked pursuant to 18 U.S.C., 923(e), 922(t)(5) or 924(p), effective:

    ☑ 15 calendar days after receipt of this notice, or  ☐ _____.

  ☐ license is suspended for _____ calendar days, effective _____, pursuant to 18 U.S.C. § 922(t)(5) or 924(p).

  ☐ licensee is fined $ _____, payment due: _____, pursuant to 18 U.S.C. § 922(t)(5) or 924(p).

If, after the hearing and receipt of these findings, you are dissatisfied with this action you may, within 60 days after receipt of this notice, file a petition pursuant 18 U.S.C. § 923(f)(3), for judicial review with the U.S. District Court for the district in which you reside or have your principal place of business. If you intend to continue operations after the effective date of this action while you pursue filing for judicial review or otherwise, you must request a stay of the action from the Director of Industry Operations (DIO), Bureau of Alcohol, Tobacco, Firearms and Explosives, at 1251 NW Briarcliff Parkway, Suite 600 Kansas City Missouri 64116
prior to the effective date of the action set forth above. You may not continue licensed operations unless and until a stay is granted by the DIO.

Records prescribed under 27 CFR Part 478 for the license described above shall either be delivered to ATF within 30 days of the date the business is required to be discontinued or shall be documented to reflect delivery to a successor. See 18 U.S.C. 923(g)(4) and 27 CFR § 478.127.

After the effective date of a license denial of renewal, revocation, or suspension, you may not lawfully engage in the business of dealing in firearms. Any disposition of your firearms business inventory must comply with all applicable laws and regulations. Your local ATF office is able to assist you in understanding and implementing the options available to lawfully dispose of your firearms business inventory.

ATF Form 5300. 13
Revised September 2014

**EXHIBIT B**

| Date | Name and Title of Bureau of Alcohol, Tobacco, Firearms and Explosives Official | Signature |
|---|---|---|
| 11/21/2023 | William Miller, Director, Industry Operations, Kansas City Field Division | WILLIAM MILLER  Digitally signed by WILLIAM MILLER Date: 2023.11.21 09:00:52 -04'00' |

I certify that, on the date below, I served the above notice on the person identified below by:

[✓] Certified mail to the address shown below.
Tracking Number: 9589071052700184 7415 985  **Or**  [ ] Delivering a copy of the notice to the address shown below.

| Date Notice Served | Title of Person Serving Notice | Signature of Person Serving Notice |
|---|---|---|
| Print Name and Title of Person Served | | Signature of Person Served |

Address Where Notice Served

Note: Previous Edition is Obsolete

ATF Form 5300.13
Revised September 2014

2



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

*Washington DC*

www.atf.gov

## IMPORTANT NOTICE

### Selling Firearms AFTER Revocation, Expiration, or Surrender of an FFL

Former Federal Firearms licensees (FFLs) who continue to sell firearms after the revocation, expiration, or surrender of their license are subject to the same rules as persons who have never been licensed in determining whether they are "engaged in the business" of selling firearms without a license in violation of 18 U.S.C. § 922(a)(l)(A). Accordingly, former licensees who wish to dispose of any remaining business inventory must adhere to the following guidance:

Business inventory must be disposed of by the former FFL in a manner that, objectively, does not constitute being engaged in the business of dealing in firearms using the same facts and circumstances test that would apply to persons who have never been licensed.

The preferred manner of disposition is for the former licensee to:

- Arrange for another FFL to purchase the business inventory (and other assets) of the business; or
- Consign the inventory to another FFL to sell on consignment, or at auction.

Should a former FFL decide against those options, he/she should be aware that future sales - whether from his/her personal firearms collection or otherwise - will be evaluated for a potential violation of 18 U.S.C. § 922(a)(l)(A), just as would occur with a person who had never been licensed.

If a former FFL is disposing of business inventory, the fact that no purchases are made after the date of license revocation, expiration, or surrender does not immunize him/her from potential violations of 18 U.S.C. § 922(a)(l)(A). Instead, business inventory acquired through repetitive purchases while licensed are attributed to the former FFL when evaluating whether subsequent sales constitute engaging in the business of dealing in firearms without a license.

ATF remains committed to assisting former licensees in complying with Federal firearms laws. If you have questions, please contact your local ATF office.

CURTIS GILBERT
Digitally signed by CURTIS GILBERT
Date: 2022.04.04 16:12:22 -04'00'

Curtis Gilbert
Deputy Assistant Director (Industry Operations)
Field Operations

Page 2 – ATF Form 5300.13, Final Notice of Revocation (Kull Auction & Real Estate Co. Inc.)

IN ACCORDANCE with 18 U.S.C. §§ 923(e) and 923(f) as well as 27 C.F.R. §§ 478.73 and 478.74, and upon review and consideration of the entirety of the administrative record which is comprised of the statements and exhibits provided by the parties at the hearing on this matter and fully incorporated herein, I hereby make the following findings and conclusions:

## I. INTRODUCTION

Kull Auction & Real Estate Co. Inc., 201 SE 59th Street, Topeka, Kansas 66619 ("Licensee"), holds a Federal firearms license as a Dealer In Firearms Other Than Destructive Devices (# 5-48-177-01-6H-01060), issued by the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") pursuant to the Gun Control Act of 1968 ("GCA"), as amended, 18 U.S.C. Chapter 44, and the regulations issued thereunder, 27 C.F.R. Part 478.

In May 2023, ATF initiated a compliance inspection of Licensee. As a result of the inspection, Licensee was cited for multiple violations of the regulations as provided in the Report of Violations issued to Licensee on June 7, 2023. Licensee reviewed the document and provided responses to the violations at a closing conference on June 15, 2023. [Gov. Ex. 3]. On July 7, 2023, ATF issued Licensee a Notice to Revoke License ("Notice"), ATF Form 4500 (5300.4) [Gov. Ex. 1] alleging that Licensee had willfully violated the GCA. Licensee, through responsible person ("RP") Daniel Kull, timely requested a hearing to review the Notice, and ATF then issued a Notice of Hearing scheduling the hearing. [Gov. Ex. 1].[1] The hearing was held on September 26, 2023, at the ATF Kansas City Field Division Office.

I, ATF Kansas City Field Division Director, Industry Operations ("DIO") William J. Miller, conducted this hearing. ATF Kansas City Field Division Senior Attorney Jordan Bergus represented ATF and the DIO as the attorney for the Government. ATF Industry Operations Investigator ("IOI") Christopher Porta was present for the purpose of presenting evidence on behalf of ATF. Licensee was represented by counsel Philip Milks and RP Daniel Kull. Kurt Young, Licensee's employee responsible for GCA compliance and bookkeeping, was also present for the purpose of presenting evidence on behalf of Licensee. The hearing was recorded and transcribed through a court reporting service. ATF and Licensee (through their representatives) offered statements, documents and/or exhibits. The statements and exhibits introduced at the hearing constitute the record in this administrative proceeding.

## II. FINDINGS

Having reviewed the record in this proceeding, I make the following findings:

**Compliance History and Violations**

1. ATF first issued a Federal firearms license to Licensee in 2005. At that time, ATF educated Licensee on the laws and regulations governing the license with the aid of the ATF Acknowledgement of Federal Firearms Regulations form. [Gov. Ex. 2]. At the conclusion of that qualification inspection, Licensee signed the Acknowledgement,

---

[1] In the case of a corporation, partnership, or association, a responsible person is any individual possessing, directly or indirectly, the power to direct or cause the direction of the management, policies, and practices of the corporation, partnership, or association, insofar as they pertain to firearms.

Page 3 – ATF Form 5300.13, Final Notice of Revocation (Kull Auction & Real Estate Co. Inc.)

    recognizing in pertinent part that Licensee "understand[s] that this is only a general overview of the regulations and that [Licensee] will be responsible for familiarizing [itself] with all of the laws and regulations governing [its] licensed firearms business. [*Id.*]."

2. Since that time, and prior to the 2023 compliance inspection, ATF conducted compliance inspections of Licensee in 2006, 2007, 2011, 2012, 2013, and 2018. [Gov. Exs. 1, 2]. At the conclusion of each of those inspections, ATF again educated Licensee on the laws and regulations governing its license. [Gov. Ex. 2]. After each inspection, Licensee likewise signed the Acknowledgement, recognizing that it continues to bear the same responsibilities for GCA compliance as it did in 2005. [*Id.*].

3. As a result of the 2007 inspection, Licensee received a warning letter from ATF in which violations and proposed corrective actions were reviewed. [Gov. Ex. 7]. These violations included failing to report the multiple sales of handguns and failing to properly record National Instant Criminal Background Check System ("NICS") information on the ATF Form 4473. [*Id.*]. The warning letter advised that "[a]ny future violations, either repeat or otherwise, could be viewed as willful and may result in the revocation of your license." [*Id.*].

4. As a result of the 2011 inspection, Licensee attended a warning conference with ATF due to violations discovered in the inspection. [Gov. Ex. 1]. These violations included failing to contact NICS to conduct a background check, in violation of 27 C.F.R. § 478.102. [Gov. Ex. 7]. Licensee received the same or a similar admonition as above at the warning conference. [*See* Hearing Transcript ("HT"), pg. 63:16-64:4].

5. ATF conducted a seventh compliance inspection on May 22, 2023. As a result of that inspection, four violations were identified.[2] A Notice of Revocation was issued to Licensee based upon reasonable belief that two willful violations occurred. These violations were the subject of the September 26, 2023 hearing and the within findings and conclusions.

6. At the hearing and on the record, Licensee admitted that the violations occurred, leaving my determination limited to that of finding whether either or both of the violations were willful, as legally defined below. [*See, e.g.*, HT, pgs. 72:3-14; 105:10-16; 108:16-18; *see also* Gov. Ex. 1 (Licensee's letter requesting a hearing on the Notice of Revocation)].

7. Violation #1:

    a. Violation 1 asserted that on three occasions, Licensee willfully transferred a firearm to an unlicensed person without first contacting NICS, in violation of 18 U.S.C. § 922(t) and 27 C.F.R. § 478.102.

---

[2] While the inspection revealed four discrete violations, the Notice of Revocation alleged two willful violations—failing to conduct NICS checks, in violation of 27 C.F.R. § 478.102 and failing to report multiple sales, in violation of 27 C.F.R. § 478.126a.

5

Page 4 – ATF Form 5300.13, Final Notice of Revocation (Kull Auction & Real Estate Co. Inc.)

    b. The Government, through the statements of IOI Porta, presented information that Licensee accepted three out-of-State permits in lieu of conducting NICS checks. [Gov. Ex. 5; HT, pgs. 41:1-49:4]. IOI Porta described how in each of the three occasions, Licensee did not complete a NICS check, but instead recorded either Iowa or Nebraska permits in Item 29 as a NICS alternative. [*Id.*]. IOI Porta noted that the ATF Form 4473 contains an explicit admonition that a permit may only be accepted in lieu of a NICS check if it is from the State in which the transfer takes place. [HT, pg. 43:15-21]. IOI Porta further discussed the public safety importance of ensuring that NICS checks are completed to prevent prohibited individuals from obtaining firearms and why it matters that only proper NICS alternatives are accepted in lieu of conducting NICS checks. [HT, pg. 57:5-58:5].

    c. At the closing conference, Young acknowledged that the violations occurred, and admitted that he had attended a Federal Firearms Licensee ("FFL") training seminar in April of 2022 during which it was made clear that an out-of-State permit may not be used as a NICS alternative. [Gov. Ex. 3; HT, pgs. 47:22-48:6]. I note that, from a review of the evidence, two of the violations occurred after Young stated that he attended the FFL training seminar. [Gov. Ex. 5; HT, pgs. 48:17-49:6; 89:6-12]. At the hearing, Kull stated this violation occurred because an employee misunderstood the requirements for acceptable NICS alternatives after conducting independent online research. [HT, pgs. 73:11-74:11]. Kull did not state whether that employee attended the training seminar nor did he indicate that Young passed along the seminar information to the staff. Kull acknowledged that as the sole responsible person, he was entrusted with ensuring GCA compliance and that his employee's actions are attributable to the license. [HT, pgs. 79:18-80:11].

    d. As noted in Paragraphs 1 and 2, Licensee had previously been inspected and counseled on GCA legal requirements. [Gov. Ex. 2]. As further noted in Paragraph 4, Licensee had been specifically cited for violating 27 C.F.R. § 478.102 in 2011 and attended a warning conference with ATF concerning the violation. [Gov. Ex. 7]. While the facts underlying the 2011 violation were different than the within matter, they are sufficiently similar so as to find that the requirements of this regulation were specifically drawn to the attention of Licensee. ATF verbally warned Licensee that further violations of this provision could be viewed as willful and result in revocation of its license. [HT, pg. 63:16-64:4].

    e. I find the inspection disclosed the factual grounds demonstrating Licensee committed Violation 1 as set forth in the Notice, that Licensee knew of the legal obligations to comply with this regulatory requirement, and that the violation occurred willfully. I find that this is a repeat violation for which Licensee had been warned against in the past. I do not find Licensee's explanation that an employee incorrectly self-educated to be a valid excuse as the ATF Form 4473 contains explicit instructions as to when a NICS alternative may be accepted. I further do not find that Young's attendance at an FFL seminar mitigates especially since Licensee's willful misconduct as to two violations occurred after

Page 5 – ATF Form 5300.13, Final Notice of Revocation (Kull Auction & Real Estate Co. Inc.)

that seminar and such time that Licensee, by Kull's own admission, was specifically aware of the legal requirements. If anything, this only lends further support for this violation occurring due to plain indifference to the GCA.

8. Violation #2:

   a. Violation 2 alleged that on two occasions, Licensee willfully failed to timely and/or accurately report the sale or other disposition of two or more pistols and/or revolvers during any five consecutive business days to an unlicensed person, in violation of 18 U.S.C. § 923(g)(3)(A) and 27 C.F.R. § 478.126a.

   b. The Government, through the statements of IOI Porta, presented information that Licensee failed to timely complete an ATF Form 3310.4 to report multiple sales of pistols and/or revolvers on two occasions (Stalcup and Newby). [Gov. Ex. 6; HT, pgs. 49:5-57:4]. IOI Porta also stated that Licensee had properly completed multiple sales reports in 22 other circumstances, which demonstrates that Licensee had the knowledge and ability to comply with this regulation. [HT, pg. 51:15-20]. Licensee's failure to report this type of transaction thwarts ATF's intelligence mission of identifying potential straw purchasers and firearms traffickers. [HT, pgs. 50:14-51:10] which is why it is emphasized during qualification and compliance inspections.

   c. As to the failure to report the multiple sale involved the transfer of two handguns to Transferee Stalcup, I make no finding as to this occasion.

   d. Concerning Transferee Newby, the failure to report the multiple sale involved the transfer of fifteen handguns. [HT, pgs. 51:21-52:13].

   e. At the closing conference, Licensee did not offer an explanation concerning Transferee Newby's transaction.

   f. Whereas at the hearing, Young later admitted that the multiple sales report concerning Transferee Newby was not generated because the transaction occurred at night when "it was cold, it was winter, it was dark." [HT, pg. 108:10-18]. When directly confronted about that transaction during the hearing, Licensee corroborated this version of events in response to the following question: "[I]t was cold, it was dark, it was late, you wanted to get out of there and so you were too busy to complete the multiple sale that evening?" to which Kull responded "Correct." [HT, pg. 109:11-16]. Kull further offered that the multiple sale form was intended to be completed the next day and that failure to do so as an oversight. [*Id.*]. I note that completing the ATF Form 3310.4 the following day, even if it had happened, would still have constituted a violation of 27 C.F.R. § 478.126a.

   g. As noted in Paragraphs 1 and 2, this Licensee had previously been inspected and counseled on GCA legal requirements. [Gov. Ex. 2]. As further noted in Paragraph 3, this Licensee had been specifically cited for violating 27 C.F.R. §

Page 6 – ATF Form 5300.13, Final Notice of Revocation (Kull Auction & Real Estate Co. Inc.)

> 478.126a in 2007 and received a warning letter from ATF concerning the violation. [Gov. Ex. 7]. The warning letter advised that "[a]ny future violations, either repeat or otherwise, could be viewed as willful and may result in the revocation of your license." [*Id.*].
>
> h. I find the inspection disclosed the factual grounds demonstrating Licensee committed Violation 2 as to Transferee Newby as set forth in the Notice, that Licensee knew of the legal obligations to comply with this regulatory requirement, and that the violation occurred willfully.[3] I find that this is a repeat violation for which Licensee had been warned against in the past. I further find that Licensee's excuses, including blaming the time of day and the weather for non-compliance, demonstrate plain indifference towards its legal obligation to timely submit multiple sales reports.

## Legal Standard

Pursuant to the GCA and as found at 18 U.S.C. § 923(e) and 27 C.F.R. § 478.73, ATF may, after notice and opportunity for hearing, revoke a Federal firearms license when a licensee willfully violates the GCA, and regulations promulgated thereunder.

For the Government to prove a willful violation of the Federal firearms statutes, it need only establish that a licensee knew of the legal obligations and "purposefully disregarded or was plainly indifferent" to the legal requirements. *See Borchardt Rifle Corp. v. Cook*, 684 F.3d 1037, 1042-43 (10th Cir. 2012) (holding that plain indifference towards a known legal obligation meets the willfulness requirement and that this may be shown with circumstantial evidence); *see also Lewin v. Blumenthal*, 590 F.2d 268, 269 (8th Cir.1979); *On Target Sporting Goods, Inc. v. Attorney General of the United States*, 472 F.3d 572 (8th Cir. 2007) (violations by Federal firearms licensee were deemed willful and justified ATF's licensing action when the licensee committed violations such as failure to keep proper acquisition and disposition records; ATF informed the licensee's owner of the firearms record-keeping duties and the owner admitted falling behind in these responsibilities); *Trader Vic's v. O'Neill*, 169 F.Supp.2d 957, 965 (N.D. Ind. 2001) (finding a licensee has a duty to be cognizant of the rules and regulations issued by ATF and has a duty to follow those mandates in the course of his regulated business activities).

## Application of Legal Standard

Because willfulness is "rarely provable by direct evidence," willfulness may be shown by circumstantial evidence. *See Borchardt Rifle Corp.*, 684 F.3d at 1043 (*quoting United States v. Brown*, 996 F.2d 1049, 1057 (10th Cir. 1993)).  Examples of circumstantial evidence that can support a finding of willfulness include: (1) that a licensee received training from ATF in obtaining its FFL and during inspections, (2) periodic compliance by the licensee—showing a licensee knew how to meet its obligations and did so at other times, (3) the length of time a licensee has held its license, (4) the magnitude of violations, and (5) statements to investigators.

---

[3] I do not make a finding as to Transferee Stalcup and do not consider that transaction as part of my ultimate decision to revoke Licensee's Federal firearms license.

Page 7 – ATF Form 5300.13, Final Notice of Revocation (Kull Auction & Real Estate Co. Inc.)

*See CEW Properties, Inc. v. U.S. Department of Justice, Bureau of Alcohol, Tobacco, Firearms, and Explosives*, 979 F.3d 1271, 1279 (10th Cir. 2020).

Any single willful violation of the Federal statutes or regulations controlling the firearms industry can be a basis for revoking or denying a license. *Id.* at 1280 (*citing Fairmont Cash Mgmt., L.L.C. v. James*, 858 F.3d 356, 362 (5th Cir. 2017) ("A single willful violation authorizes the ATF to revoke the violator's [license], regardless how severe, though the frequency and severity of the violations can be relevant to willfulness.")); *see Gun Shop, LLC. v. United States Dep't of Justice*, No. 4:10-CV-1459 (MLM), 2011 WL 2214671, at *6 (E.D. Mo. June 3, 2011) ("By the statute's plain language, even a single willing violation can trigger ATF's power of revocation."), *citing American Arms Int'l v. Herbert*, 563 F.3d 78, 86 (4th Cir. 2009); *see also General Store, Inc. v. Van Loan*, 560 F.3d 920, 924 (9th Cir. 2009); *Armalite, Inc. v. Lambert*, 544 F.3d 644, 647 (6th Cir. 2008); *Article II Gun Shop, Inc. v. Gonzales*, 441 F.3d 492, 498 (7th Cir. 2006).

ATF has the right to insist on total compliance with the GCA to retain the privilege of dealing in firearms. *Willingham Sports, Inc. v. ATF*, 348 F.Supp.2d 1299, 1309 n.14 (S.D. Ala. 2004) ("[g]ravity of the policy objectives of the Gun Control Act, from both a law enforcement standpoint and a safety standpoint, strongly militates in favor of allowing the ATF to insist on total compliance as a condition of retaining the privilege of dealing in firearms."). "An overarching purpose of the GCA is to protect the public by ensuring that federally licensed gun dealers carefully follow the rules. The point is . . . to protect the public from firearms ending up in the wrong hands, which can easily happen where a licensed dealer repeatedly demonstrates plain indifference to the GCA requirements." *Shawano Gun & Loan, LLC v. Hughes*, 2010 WL 3062847, at *6 (E.D. Wis. Aug. 2, 2010). As noted in the findings, Licensee's non-compliance with the two cited violations have a direct correlation to public safety. A critical responsibility of a licensee is to help ensure that the GCA requirements are met. *See A-TAC Gear*, 530 F.Supp.3d at 1039 ("ATF cannot monitor every single firearms dealer at every moment. The Act's effectiveness thus rests largely on dealers' taking its regulations seriously.").

As detailed in my findings, the record establishes that Licensee understood the legal requirements concerning the violations documented in the Notice. Specifically, ATF reviewed the applicable laws and regulations with Licensee during the 2005 qualification and 2006, 2007, 2011, 2012, 2013, and 2018 compliance inspections, and Licensee has continuously held and operated its license for 18 years. *Compare CEW Props. Inc. v. U.S. DOJ*, 2019 WL 2305154, at *3 (W.D. Okla. May 30, 2019) ("Given the length of time Petitioner had held an FFL, the amount of information and training [licensee] had received, and the fact that [licensee] twice affirmed that he understood he needed to familiarize himself with federal firearms regulations, the Court finds that Petitioner's violations were willful."). ATF provided Licensee with resource materials and Licensee acknowledged being familiar with, or having reviewed, the various resources provided by ATF including an FFL training seminar. [*See* Gov. Ex. 2]. Licensee also demonstrated on other occasions the ability to properly comply with these requirements.

Moreover, Licensee has violated the same provisions of the regulations in the past and has been warned that future violations, repeat or otherwise, could be viewed as willful. [Gov. Ex. 7]. Although not required, repeated violations can constitute sufficient evidence to establish the requisite state of mind under the willfulness standard. *A-TAC Gear Guns Uniforms LLC v. U.S.*

Page 8 – ATF Form 5300.13, Final Notice of Revocation (Kull Auction & Real Estate Co. Inc.)

*Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives*, 530 F.Supp.3d 1033, 1040 (D. Colo. 2021) (holding that repeated violations can establish sufficient circumstantial evidence of willfulness). After a dealer is informed of the GCA requirements and warned of violations, subsequent repeat violations can suffice to at least show plain indifference to the statutory requirements. *Borchardt*, 684 F.3d at 1043. *See RSM, Inc. v. Herbert*, 466 F.3d 316, 322 (4th Cir. 2006) ("[W]hen such errors continue or even increase in the face of repeated warnings . . . one may infer as a matter of law that the licensee simply does not care about the legal requirements. At that point, the failures show the licensee's plain indifference and therefore become willful."); *see also Borgelt v. Bureau of Alcohol, Tobacco and Firearms*, 2009 WL 3149436, at *4 (W.D. Wash.) ("[T]he government often proves willfulness by showing that a licensee repeatedly violated regulations despite knowledge of them and repeated warnings."). By the time of this current inspection, Licensee already had seven prior compliance inspections two of which resulted in either a warning letter or conference, specifically concerning each of the above cited regulations. Because errors continued after multiple warnings, ATF may infer that Licensee's conduct was willful.

Licensee asserted that the Newby violation was an oversight. [*See, e.g.*, HT, pg. 109:11-20]. However, the GCA does not require an intentional criminal act to establish willfulness and the Government is not required to show that the violations occurred with any bad purpose. *Lewin*, 590 F.2d at 269; *On Target*, 472 F.3d at 575. Instead, a purposeful disregard or plain indifference to a known legal obligation is legally sufficient to show willfulness. In that regard, periodic compliance, such as a licensee's occasional adherence to regulatory obligations, also supports a finding of willfulness. *CEW Properties*, 979 F.3d at 1280, *citing Simpson v. Att'y Gen.*, 913 F.3d 110, 115-16 (3d Cir. 2019) (noting that a licensee's "full compliance with [Gun Control Act] requirements in some instances belies his assertion that he did not understand those requirements," and his "inconsistent conduct suggests both that [he] knew of his obligations and was indifferent to complying with them.").

Specific to Licensee's failure to create and transmit a multiple sales report, the undisputed evidence from the hearing was that Licensee recognized it was obligated to transmit a report after selling 15 handguns to Transferee Newby but did not do so because it was "cold," "dark," and late in the day. [HT, pg. 108:10-18]. Licensee does not have discretion to comply with the GCA only when it is convenient for Licensee to do so. Indeed, these statements evidence Licensee's plain indifference to its known legal obligation. Licensee has demonstrated the ability to properly complete and transmit multiple sales reports in the past, which further shows its knowledge of and its ability to comply with the requirement to do so. [HT, pg. 51:15-20].

Licensee asserts that failure to comply with 27 C.F.R. § 478.102 stems from what could be characterized as confusion as to when an alternative to NICS may be utilized. [*See* Gov. Ex. 3; HT, pgs. 73:11-74:11]. This is directly refuted by Licensee participating in educational sessions with ATF on at least seven prior occasions and acknowledging that it understood its legal obligations, specific to NICS background check requirements. [Gov. Ex. 2]. Moreover, the ATF Form 4473 contains explicit instructions in Item 29, the block that concerns NICS alternatives, which states, "No NICS check is required because the transferee/buyer has a **valid permit from the State where the transfer is to take place**, which qualifies as an exemption to NICS." [Gov. Exs. 4, 5 (emphasis added); HT, pg. 43:15-21]. Had Licensee read this instruction, there is no ambiguity as to whether it could accept out-of-State permits in lieu of conducting a NICS check.

Page 9 – ATF Form 5300.13, Final Notice of Revocation (Kull Auction & Real Estate Co. Inc.)

Licensee also admitted that it attended a GCA training seminar that made clear the legal requirements for NICS checks including permissible alternatives. [HT, pgs. 48:17-49:4; 89:6-12]. Nonetheless, Licensee continued to violate this regulation after attending the seminar, further demonstrating Licensee's plain indifference to the GCA. [*Id.*, Gov. Ex. 5].

Lastly, an RP is accountable for the actions of its employees through the doctrine of respondeat superior. *Augustson v. Holder*, 728 F. Supp. 2d. 1279, 1286 (D.N.M. 2010). RP Kull acknowledged the same during the hearing. [HT, pgs. 79:18-80:11]. While he may not have personally committed the violations at hand, any willful violations are properly attributed to him as the owner of the licensed business and support a finding that the Licensee willful violated the GCA.

### III. CONCLUSIONS

Based on the factual findings and the entire record as applied to the legal standard set forth above, I find:

1. Licensee failed to comply with its legal obligations under the GCA as set forth in the Violation 1 and the Newby transfer in Violation 2;

2. Licensee had knowledge of those legal obligations;

3. Licensee acted with plain indifference and/or reckless disregard as to Violation 1 and the Newby transfer in Violation 2; and

4. Licensee, Kull Auction & Real Estate Co. Inc., and sole Responsible Person Daniel Kull willfully violated the GCA and are therefore not eligible to hold a Federal firearms license.

Due to the willful violation of the above listed statute and regulations, and upon full consideration of the entirety of the administrative record, the Federal firearms license issued to Kull Auction & Real Estate Co. Inc. is hereby revoked pursuant to 18 U.S.C. § 923(e), and Title 27, Code of Federal Regulations, § 478.74. See page 1 (5300.13) for effective date.