**In the United States District Court
for the District of Kansas**

---

Case No. 23-cv-04117-TC-BGS

---

KULL AUCTION & REAL ESTATE CO., INC.,

*Plaintiff*

v.

WILLIAM MILLER,

*Defendant*

---

**MEMORANDUM AND ORDER**

Pursuant to 18 U.S.C. § 923(e), the United States Bureau of Alcohol, Tobacco, Firearms and Explosives issued a notice of intent to revoke Kull Auction and Real Estate Company's federal firearms license for willful violation of the Gun Control Act of 1968, 18 U.S.C. § 921 *et seq*.[1] Kull Auction requests a temporary restraining order and preliminary injunction barring William Miller, the Bureau's Director of Industry Operations for the Kansas City Division, from revoking Kull Auction's license. Doc. 5. For the following reasons, Kull Auction's motion is denied.

**I**

**A**

Preliminary injunctions and temporary restraining orders are extraordinary remedies that exist for "the limited purpose…[of] preserv[ing] the relative positions of the parties until a trial on the merits can be held." *Schrier v. Univ. Of Co.*, 427 F.3d 1253, 1258 (10th Cir.

---

[1] To distinguish Kull Auction and Real Estate Company from its proprietor, Mr. Daniel D. Kull, it will be referred to as Kull Auction.

2005) (citation and quotation marks omitted).[2] Under Fed. R. Civ. P. 65, a party seeking a preliminary injunction or temporary restraining order must show four things: "they are substantially likely to succeed on the merits of their claims," "they will suffer irreparable harm if the injunction is denied," "their threatened injury without the injunction outweighs any harm to the party opposing the injunction," and "the injunction, if issued, is not adverse to the public interest." *Harmon v. City of Norman*, 981 F.3d 1141, 1146 (10th Cir. 2020) (citing *Benisek v. Lamone*, 138 S. Ct. 1942, 1943 (2018)). The third and fourth factors "merge" in cases where the Government is the opposing party. *NKen v. Holder*, 556 U.S. 418, 435 (2009). The Tenth Circuit recognizes that the first factor, likelihood of success on the merits, is the "most important." *Planned Parenthood of Kan. v. Andersen*, 882 F.3d 1205, 1229 (10th Cir. 2018).

A preliminary injunction is never awarded as of right and is generally disfavored as a remedy. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). And preliminary injunctions that mandate specific action, change the status quo, or grant all the relief a victorious movant could obtain at trial are especially disfavored. *Free the Nipple-Fort Collins v. City of Fort Collins, Colo.*, 916 F.3d 792, 797 (10th Cir. 2019). Movants seeking a disfavored injunction must make a "strong showing" that the likelihood-of-success-on-the-merits and balance-of-harms factors weigh in their favor. *Id.*; *see also O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004) (en banc), *aff'd*, 546 U.S. 418 (2006).

## B

Kull Auction is a firearms dealer based in Topeka, Kansas. Doc. 1 at ¶ 8.[3] It offers both "professional auctioneering services" and "appraisals for firearms and real estate." Doc. 6-1 at ¶ 3. To deal in firearms, Kull Auction maintains a Type 01 Federal Firearms License. *Id.* at ¶ 4. According to Mr. Kull, 98% of Kull Auction's business comes from firearms. *Id.* at ¶ 3.

---

[2] Temporary restraining orders and preliminary injunctions are governed by essentially the same standard. *See* Fed. R. Civ. P. 65(b); *see also Schrier v. Univ. Of Co.*, 427 F.3d 1253, 1256 (10th Cir. 2005) (treating a request for a preliminary injunction and temporary restraining order under the same standard).

[3] All citations are to the document and page numbers assigned in the CM/ECF system.

The Bureau of Alcohol, Tobacco, Firearms and Explosives inspected Kull Auction for its compliance with regulations in 2006, 2007, 2011, 2012, 2013, 2018, and, at issue here, May 2023. *Id.* at ¶ 15. During the Bureau's May 2023 compliance inspection, covering transactions between May 21, 2022 and May 21, 2023, the Bureau uncovered five alleged violations of 18 U.S.C. § 921 *et seq.*

On July 7, 2023, the Bureau notified Kull Auction of its intent to revoke Kull Auction's license. Four of the five violations formed the basis of the Bureau's intent to revoke: three instances in which Kull Auction accepted out-of-state concealed weapons permits and did not conduct a national background check in violation of 18 U.S.C. § 922(t), and one instance of failure to file a Form 3310.4, which must be filed by the close of business any time multiple handguns are sold to the same buyer, in violation of Section 923(g)(3)(A). Doc. 6 at 8–10; *see also* 27 C.F.R. § 478.126a (requiring Form 3310.4 to be filed by the close of business). Kull Auction was previously warned for failures to file Form 3310.4 after the 2007 inspection. Doc. 16 at 11.

In order to revoke a license, the Bureau must make a finding of a "willful" violation. Section 923(g)(3) provides in pertinent part that:

> The Attorney General may, after notice and opportunity for hearing, revoke any license issued under this section if the holder of such license has willfully violated any provision of this chapter or any rule or regulation prescribed by the Attorney General under this chapter …

18 U.S.C. § 923(g)(3).

After an administrative hearing before Director Miller, the Bureau found the four violations were willful and issued a Final Notice to revoke Kull Auction's license.[4] Doc. 1 at ¶ 37. Since the hearing was not a formal adjudication under the Administrative Procedure Act, *see* 5 U.S.C. § 554, Kull Auction alleges it was unable to compel witnesses to appear or engage in discovery. Doc. 1 at ¶ 33. On Kull Auction's request, the Bureau issued a stay of the revocation until January 12, 2024 so that Kull Auction could wind down its business. Doc 1 at ¶¶

---

[4] While the Government relies on the hearing transcript, *e.g.*, Doc. 16 at 4–5, Kull Auction does not, claiming it has been unable to review the transcript despite repeated and unsuccessful requests for it. Doc. 23 at 4.

3

53, 54. During the stay it was, however, prohibited from acquiring additional firearms. Doc. 1 at ¶ 54.

Kull Auction petitioned for judicial review under Section 923(f)(3), alleging that the Bureau was without authority to revoke its license. Doc. 1. Kull Auction asserted each violation was an accidental mistake rather than a willful error. Doc. 1 at ¶¶ 23, 29, 36. It now seeks a temporary restraining order or preliminary injunction preventing Miller from revoking its federal firearms license until the dispute is resolved on the merits in federal court. Docs. 1 and 5. A telephone status conference was held to schedule an in-person hearing on Kull Auction's motion for preliminary relief, but the parties confirmed that no in-person hearing was necessary, and that this motion should be resolved on the briefs submitted. Docs. 14 and 15. Two days after the motion was fully briefed, an Order denying Kull Auction's motion was entered so that an immediate appeal might be taken before January 12. Doc. 25 at 2 (noting that a forthcoming Memorandum and Order fully explaining the reasons for the denial would follow).

## II

Kull Auction has not established that it is substantially likely to prevail on the merits or that the balance-of-harms or public interest swings in its favor. Doc. 25. As a result, its motion is denied.[5]

## A

Kull Auction's claim implicates the Government's powers under the Gun Control Act of 1968, 18 U.S.C. § 921 *et seq.* In pertinent part, the Gun Control Act provides that "[t]he Attorney General may, after notice and opportunity for hearing, revoke any license issued under

---

[5] Certain types of injunctions are historically disfavored to the extent they offer especially extraordinary relief. *See Shrier v. Univ. of Colo.*, 427 F.3d 1253, 1258-59 (10th Cir. 2005). Such is the case when a requested injunction alters, rather than preserves, the status quo, requires action rather than prohibits it, or grants all the relief that is available to the requesting party at trial. *Awad v. Ziriax*, 670 F.3d 1111, 1125 (10th Cir. 2012). When an injunction is disfavored, courts "require more of the parties who request them[:]" they must make a "strong showing" that they are likely to prevail at trial and that the balance of harms is in their favor. *Free the Nipple-Fort Collins v. City of Fort Collins, Colo.*, 916 F.3d 792, 797 (10th Cir. 2019). In this case, the standard matters not because Kull Auction has not shown it is likely to prevail under either one.

4

this section if the holder of such license has *willfully* violated any provision of this chapter or any rule or regulation prescribed by the Attorney General under this chapter . . .". 18 U.S.C. § 923(e) (emphasis added).

Willfulness captures "plain indifference toward known legal obligations," which may be either directly shown or "infer[red] … if the defendant (1) knew of the requirement or (2) knew generally that his failure to act would be unlawful." *CEW Properties, Inc. v. U.S. Dep't of Just., Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 979 F.3d 1271, 1273 (10th Cir. 2020) (citing *Borchardt Rifle Corp. v. Cook*, 684 F.3d 1037, 1042 (10th Cir. 2012)); *see also RSM, Inc. v. Herbert*, 466 F.3d 316, 320 (4th Cir. 2006) (willful "describes conduct" which is "intentional, knowing, or voluntary"). Proving willfulness does not require showing a pattern of pervasive violations; one violation in circumstances which show plain indifference may trigger revocation. 27 C.F.R. § 478.73(a); *see also Borchardt Rifle Corp.*, 684 F.3d at 1042 *and CEW Properties*, 979 F.3d at 1274.

Kull Auction is unlikely to prevail on the merits based on the current record. Plausible evidence demonstrates that Kull Auction's voluntary actions, actions which indisputably violated the Gun Control Act, were done with, or in spite of, knowledge of the requirements of the Gun Control Act forbidding them. *Contra* Doc. 6 at 3–11; Doc. 23 at 3–4. Regarding the first three violations, an employee chose not to conduct mandatory federal background checks, instead relying on his or her own independent research and erroneously concluding that valid out-of-state concealed weapons permits were sufficient to permit the sale of guns to an individual without the need to conduct a background check. Doc. 6-1 at ¶ 22. But Kull Auction knew that a background check was required in the absence of a valid exception and that an out-of-state permit did not substitute for a background check. Doc. 6-1 at ¶ 20. And where a licensee's employees are permitted to come to their own legal conclusions about the requirements of the law, a plausible inference is that there was a lack of or insufficient training which suggests plain indifference to legal requirements. *See Armalite, Inc. v. Lambert*, 544 F.3d 644, 649–50 (6th Cir. 2008) (concluding that a lack of compliance infrastructure can transform mere negligence into willfulness).[6]

---

[6] Kull Auction's attempt to claim its knowledge cannot be imputed to its employee would create a safe harbor for firms that do not properly train or control employees. *Contra* Doc. 6 at 9. Even accepting Kull Auction's

The same is true of the fourth violation the Bureau identified. Following a multi-gun sale, Kull Auction employees chose to go home for the evening without submitting Form 3310.4 even though Kull Auction knew the form had to be submitted on the date of the transaction by the close of business. Doc. 6-1 at ¶¶ 26, 27. And, to make matters worse, that form for the multi-gun sale was not submitted the following day. Kull Auction, in fact, never submitted it. Doc. 6 at 10. That Kull Auction employees "accidentally forgot" to file the Form 3310.4 after the fact does not convert the willful violation into an excusable mistake. *Contra* Doc. 6 at 10. This is especially true since the Bureau had specifically warned Kull Auction before that similar behavior was a violation. *See* Doc. 16-3.

Consequently, the current record fails to establish that each of Kull Auction's four violations are not willful. As a result, Kull Auction cannot establish that it is substantially likely to prevail on the merits. *Cf. Heartland Outdoor, Inc. v. Miller*, No. 23-1182, 2023 WL 6376751, at *4 (D. Kan. Sept. 29, 2023) (inferring willful violations in a situation where the entity, through its responsible person, had received notice of past similar violations and was educated on the laws and regulations at issue).

Kull Auction attempts to minimize its culpability by pointing to other cases where a license was revoked that involved malfeasance on a much broader scale. Doc. 6 at 4–5 (citing *Borchardt Rifle* and *CEW Properties*).[7] Undoubtedly, the violations in *Borchardt Rifle* and *CEW Properties* were more pervasive than here. *See Borchardt Rifle*, 684 F.3d at 1039–40 (noting at least 43 errors, sloppy paperwork, and seriously lax and inadequate bookkeeping) *and CEW Properties*, 979 F.3d at 1275

---

suggestion that a safe harbor concept would be a good idea, it finds no support in the laws or regulations. *See* 18 U.S.C. § 923 (listing no such safe harbor). Accordingly, cases within the Tenth Circuit focus on whether the entity had knowledge of the law's requirements rather than on whether the individual who committed the violation did. *See, e.g., Augustson v. Holder*, 728 F. Supp. 2d 1279, 1285 (D.N.M. 2010).

[7] Kull opines that it was Congress' intent "to permit revocation only where a serious level of intent [to violate the GCA] is involved." Doc. 6 at 4. Courts are not in the business of attempting to divine the collective intent of a multi-member, bicameral institution whose resulting legislation was presented to the President: "Only the words on the page matter." *Bostock v. Clayton Cnty., Ga.*, 140 S. Ct. 1731, 1738 (2020).

(noting approximately 300 violations and a deliberate refusal to conduct background checks on law enforcement patrons). And many other cases involve a pattern, number, and degree of violations that are far more egregious than the facts here. *See, e.g., Simpson v. Att'y Gen. United States of Am.*, 913 F.3d 110, 113 (3d Cir. 2019). But that is irrelevant as a matter of law: just one willful violation is sufficient to support revocation.[8] *CEW Properties*, 979 F.3d at 1274; *see also Simpson*, 913 F.3d at 114 (citing *Fairmont Cash Mgmt., L.L.C. v. James*, 858 F.3d 356, 362 (5th Cir. 2017) ("[a] single willful violation [of the GCA] authorizes the ATF to revoke the violator's FFL, regardless of how severe.").

Kull Auction finally contends that the Bureau should be required to show willfulness by clear and convincing evidence, a standard that, it contends, increases the likelihood that it will prevail on the merits. Doc. 6 at 11. While this may be an open question in the Tenth Circuit, the most recent case to address the issue, *CEW Properties*, suggested that a preponderance of the evidence standard applies. *See CEW Properties, Inc. v. U.S. Dep't of Just., Bureau of Alcohol, Tobacco, Firearms, & Explosives,* 979 F.3d 1271, 1278 n.10 (10th Cir. 2020) (citing *Bender v. Clark*, 744 F.2d 1424, 1429 (10th Cir. 1984) ("[w]e note, though, that the authorities suggest the preponderance standard applies"). Even if the Bureau had to establish willfulness to this level at trial, Kull Auction has not demonstrated that it is likely to succeed because the facts supporting the willfulness are largely uncontested.

**B**

Kull Auction's inability to demonstrate a substantial likelihood of success on the merits is a sufficient reason to deny injunctive relief. *See, e.g., McDonnell v. City & Cnty. of Denver*, 878 F.3d 1247, 1252 (10th Cir. 2018). But there are three other factors to consider: whether the movant "will suffer irreparable harm if the injunction is denied," whether the movant's "threatened injury without the injunction outweighs any harm to the party opposing the injunction," and whether "the injunction, if issued, is … adverse to the public interest." *Harmon v. City of Norman*, 981 F.3d 1141, 1146 (10th Cir. 2020) (citing *Benisek v. Lamone*,

---

[8] Kull Auction notes that the Fourth Circuit has hinted that "a single, or even a few, inadvertent errors in failing to complete forms *may* not amount to "willful" failures, even when the legal requirement to complete the forms was known." *RSM, Inc. v. Herbert*, 466 F.3d 316, 322 (4th Cir. 2006) (emphasis added). But that dicta contradicts binding Tenth Circuit law.

138 S. Ct. 1942, 1943 (2018)). Even assuming Kull Auction would suffer irreparable harm, its application fails on the remaining factors.

**1.** A "significant risk of harm" that cannot be compensated after the fact is irreparable. *Trial Laws. Coll. v. Gerry Spence Trial Laws. Coll. at Thunderhead Ranch*, 23 F.4th 1262, 1271 (10th Cir. 2022). To assess whether that showing has been made, courts "consider 'the difficulty in calculating damages … and [the] existence of intangible harms such as loss of goodwill or competitive market position.'" *Id.* (quoting *Dominion Video Satellite, Inc., v. Echostar Satellite Corp.*, 356 F.3d 1256, 1264 (10th Cir. 2004)). Where, however, "simple economic loss" would be compensable post-trial, irreparable harm is not shown. *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003). And likewise, merely "theoretical" harm does not rise to the level of injury necessary to support a finding of irreparable harm. *Id.*; *see also New Mexico Dep't of Game & Fish v. United States Dep't of the Interior*, 854 F.3d 1236, 1251 (10th Cir. 2017) (holding "potential" negative effects on an ecosystem did not demonstrate irreparable harm).

Kull Auction has likely shown irreparable harm that cannot be easily remedied post-trial because the final revocation of Kull Auction's firearms license is likely to put it out of business. *See* Doc. 6-1 at ¶¶ 8–17; *cf. Husky Ventures, Inc. v. B55 Invs., Ltd.*, 911 F.3d 1000, 1012 (10th Cir. 2018) (holding that the danger of going out of business is irreparable when damages are difficult to calculate); *see also Heartland Outdoor, Inc. v. Miller*, No. 23-1182, 2023 WL 6376751, at *8 (D. Kan. Sept. 29, 2023) (holding that monetary damages for loss of market standing due to going out of business are unlikely to be calculable post-trial). Put simply, going out of business entails losses—of inventory, market position, workers, and goodwill within the marketplace—that are not likely to be compensable post-trial. That is sufficient to show irreparable harm. *See Trial Laws. Coll. v. Gerry Spence Trial Laws. Coll. at Thunderhead Ranch*, 23 F.4th at 1271.

The Government's arguments to the contrary fail. Specifically, it argues that Mr. Kull's attestations that Kull Auction will immediately go out of business are "wholly conclusory," and contrary to statements at the administrative hearing. Doc. 16 at 14 (citing Doc. 16-2 at 12, 15).

First, Mr. Kull's affidavit is supported and plausibly demonstrates that Kull Auction will be unable to conduct business without a federal firearms license. According to Mr. Kull, 98% of its business is appraisals and auctions of firearms. Doc. 6-1 at ¶ 3. He also attests that "the vast majority" of Kull Auction's inventory is subject to a consignment

agreement, obligating Kull Auction to return proceeds to customers. *Id.* at ¶ 15. Such "consignment-type" auctions (in contrast to "estate-type" auctions where the auctioneer is merely an agent of the estate) require a federal firearms license. *See* ATF Rule 96-2, Estate Sale Auctioneers and FFL Requirements, https://www.atf.gov/firearms/docs/ruling/1996-2-estate-sale-auctioneers-and-ffl-requirements; 27 C.F.R. § 70.701(d)(2) (authorizing the Bureau to issue regulatory guidance in response to taxpayer queries). Moreover, the small staff at Kull Auction and the volume of firearms transactions (allegedly up to 55,000) bolster Mr. Kull's statements that firearms make up the vast majority of Kull Auction's business. *See* Doc. 6-1 at ¶ 3 (noting Kull Auction has a staff of five) *and* Doc. 6-2 at ¶ 6 (noting up to 55,000 firearms transactions since 2005).

Second, the statements the Government points to as inconsistent are not. The Government says Kull Auction could continue to exist because at the hearing it was revealed that Kull Auction sold 15 Jaguar cars. Similarly, the Government points to Kull Auction's counsel's administrative hearing closing statement—"they obtained their FFL in the past even though they were lawfully acting as a business auctioning off firearms. They could still continue to do that in the future"—the implication apparently being that Kull Auction could function without a license by pivoting to the business it conducted prior to obtaining the license. Doc. 16-2 at 15. Certainly Kull Auction could continue to lawfully operate without a federal firearms license by pivoting away from consignment-type gun sales. But such a business would be very different from how the business operates now. It is not inconsistent to suggest that such a drastic pivot in business model jeopardizes the viability of the business. And fifteen cars is a miniscule amount of transactions compared with Kull Auction's overall volume of firearms transactions (allegedly up to 55,000).

The Government also contends that Kull Auction's harm is entirely self-inflicted because Kull admits it violated the Gun Control Act. Doc. 16 at 14 (citing *Fish v. Kobach*, 840 F.3d 710, 753 (10th Cir. 2016). But a harm is not self-inflicted when the harm is alleged to stem from agency action that exceeds the authority conferred by statute. *Cf. Fish*, 840 F.3d at 754 ("we reject the notion that the source of an injury is a litigant's decision not to comply with an allegedly unlawful state regime, rather than the regime itself"). That is the case here. Doc. 1 at 11 (alleging the "unauthorized" revocation of Kull Auction's license).

**2.** Finally, in each case where preliminary injunctive relief is at issue, courts "must balance the competing claims of injury and must

9

consider the effect on each party of the granting or withholding of the requested relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (internal quotation marks and citations omitted). Courts must also consider whether issuing the injunction is in the public interest, but this latter factor merges with the former when, as here, the Government is the opposing party. *NKen v. Holder*, 556 U.S. 418, 435 (2009).

Issuing Kull Auction the requested injunction is unlikely to be, on balance, in the public interest. Kull Auction contends that it serves a valuable purpose in the community by assisting law enforcement in destroying firearms that have been altered or defaced. Doc. 6-2 at ¶ 22. It also contends that no person was injured because of its "record keeping violations," making the loss of livelihood for its five employees unjustified compared to the Bureau's minimal "financial injury." Doc. 6 at 14. But the facts suggest Kull Auction, a regulated federal firearms dealer, willfully violated federal law when selling firearms to the public. That is conduct in which "public safety is directly and meaningfully impacted." *RSM*, 466 F.3d at 324. As a result, it cannot be said that an injunction is in the public interest.

### III

For the foregoing reasons, Kull Auction's Motion for a Temporary Restraining Order or Preliminary Injunction, Doc. 5, is DENIED.

It is so ordered.

Date: January 22, 2024          s/ Toby Crouse
                                Toby Crouse
                                United States District Judge