## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

KULL AUCTION & REAL )
ESTATE CO., INC., )
    )
          Petitioner, )
    )
      vs. )    Case No. 5:23-cv-04117-TC-BGS
    )
WILLIAM MILLER, )
Director of Industry Operations, )
Kansas City Field Division )
Bureau of Alcohol, Tobacco, )
Firearms & Explosives, )
    )
          Respondent. )
_____)

## RESPONDENT'S MOTION FOR SUMMARY JUDGMENT
## AND MEMORANDUM IN SUPPORT

     The United States, on behalf of Respondent William J. Miller, Kansas City Field Division

Director, Industry Operations, Bureau of Alcohol, Tobacco, Firearms and Explosives ("DIO

Miller or ATF"), by and through United States Attorney for the District of Kansas Kate E.

Brubacher and Assistant United States Attorneys for the District of Kansas Audrey D. Koehler

and Sarah Burch Macke, moves the Court to enter summary judgment against Petitioner Kull

Auction & Real Estate Co., Inc., pursuant to Fed. R. Civ. P. 56.

## INTRODUCTION

     Congress enacted the Gun Control Act of 1968 ("GCA") to help prevent prohibited

individuals from obtaining firearms. The GCA requires anyone engaged in the business of

importing, manufacturing, or dealing in firearms to obtain a Federal firearms license ("FFL"), to

comply with the various requirements of the GCA and its implementing regulations, and to

maintain certain records. The GCA further provides that ATF may revoke a licensee's FFL if the

licensee willfully violates any single provision of the GCA or regulations promulgated thereunder. If an FFL is revoked, the licensee may file a petition for de novo judicial review.

Here, Petitioner Kull Auction requests review of Respondent's revocation of its FFL. Respondent moves for summary judgment on the basis that the uncontroverted facts establish that Kull Auction willfully violated two different requirements imposed by the GCA and its implementing regulations. Thus, the ATF's decision to revoke Kull Auction's FFL was authorized by law.

## **RESPONDENT'S STATEMENT OF UNCONTROVERTED FACTS**

### **Background**

1.      From 2005 through November 2023, Petitioner Kull Auction and Real Estate Co., Inc. ("Kull Auction") was a Federal firearms licensee holding a Type 01 FFL and engaged in the auction and sale of firearms in Topeka, Kansas. Pretrial Order, Doc. 55, Stip. i.

2.      ATF conducted compliance inspections of Kull Auction's premises in 2006, 2007, 2011, 2012, 2013, 2018, and May 2023. Pretrial Order, Doc. 55, Stip. v, xxvii.

3.      Daniel D. Kull ("Mr. Kull") was Kull Auction's "responsible person"[1] under Kull Auction's FFL. Pretrial Order, Doc. 55, Stip. ii.

4.      Mr. Kull, as Kull Auction's responsible person, signed the ATF Acknowledgement of Federal Firearms Regulations in 2005, 2006, 2007, 2011, 2013, and 2018. Pretrial Order, Doc. 55, Stip. xxxiii.

5.      Each ATF Acknowledgment of Federal Firearms Regulations signed by Mr. Kull contained a list of regulations, guidance, and other ATF publications applicable to FFLs and an

---

[1] "Responsible persons," in the context of firearms licensing, means any individual possessing, directly or indirectly, the power to direct or cause the direction of the management, policies, and practices of the Corporation, Partnership, or Association, insofar as they pertain to firearms. Application for Federal Firearms License, ATF Form 7, p. 6, Definition 3, available at https://www.atf.gov/file/61506/download (last visited Sept. 13, 2024).

acknowledgment that an ATF Industry Operations Investigator explained the above information to Mr. Kull and answered Mr. Kull's questions regarding the information. Acknowledgements of Federal Firearms Regulations, Admin. Record, Doc. 35, pp. 147–56, 160–61.

6.     Each ATF Acknowledgment of Federal Firearms Regulations signed by Mr. Kull contained an acknowledgment that Mr. Kull would "be responsible for familiarizing [him]self with all of the laws and regulations governing [his] licensed firearms business." Acknowledgements of Federal Firearms Regulations, Admin. Record, Doc. 35, pp. 148, 150, 152, 154, 156, 161.

7.     Each ATF Acknowledgment of Federal Firearms Regulations signed by Mr. Kull included specific reference to 27 C.F.R. § 478.126a and ATF Form 3310.4. Acknowledgements of Federal Firearms Regulations, Admin. Record, Doc. 35, pp. 147, 149, 151, 153, 155, 160.

8.     Each ATF Acknowledgment of Federal Firearms Regulations signed by Mr. Kull also included specific reference to 27 C.F.R. § 478.102. Acknowledgements of Federal Firearms Regulations, Admin. Record, Doc. 35, pp. 147, 149, 151, 153, 155, 160.

9.     Item 29 of the ATF Form 4473 states that a "valid permit from the State where the transfer is to take place . . . qualifies as an exemption to NICS." ATF Form 4473, Admin. Record, Doc. 35, p. 172.

## History of Violations

10.     After the 2007 inspection, Kull Auction was issued a Report of Violations, which detailed violations found in the 2007 inspection, including the failure to report the multiple sales of handguns in violation of 27 C.F.R. § 478.126a on six instances and the failure to properly record NICS information on ATF Form 4473 on ten instances. The Report of Violations identified the requirement under 27 C.F.R. § 478.126a that the report be submitted "not later than

the close of business on the day that the multiple sale or other disposition occurred" and was signed by Mr. Kull on October 8, 2007. Pretrial Order, Doc. 55, Stip. xxviii.

11.     Kull Auction was issued a warning letter dated October 24, 2007, which included an attached copy of the 2007 Report of Violations. The 2007 letter stated that future violations could be deemed willful and result in revocation. Pretrial Order, Doc. 55, Stip. xxix.

12.     After the 2011 inspection, Kull Auction was issued a Report of Violations, which detailed violations found in the 2011 inspection, including Kull Auction's failure to contact NICS to receive a background check on two occasions in violation of 27 C.F.R. § 478.102. Pretrial Order, Doc. 55, Stip. xxx.

13.     Kull Auction was issued a warning letter dated March 12, 2012, which included an attached copy of the 2011 Report of Violations. The 2012 letter stated that future violations could be deemed willful and result in revocation and directed Mr. Kull to attend a meeting with ATF regarding the violations. Pretrial Order, Doc. 55, Stip. xxxii.

14.     The warning letter provided that "[t]he agenda for the meeting will include a discussion of the reasons for the violations, a review of the legal requirements, and a discussion of steps to be taken by you to ensure future compliance." Admin. Record, Doc. 35, p. 208. Pursuant to this letter, Kull Auction participated in the warning conference with ATF following the 2011 inspection. Admin. Record, Doc. 35, pp. 70–71, Hr. Tr. 70:8-71:1.

**May 2023 Inspection**

15.     As a result of the May 2023 inspection, on July 7, 2023, ATF issued a Notice to Revoke or Suspend License and/or Impose a Civil Fine, ATF Form 4500 (5300.4), to Kull Auction identifying five instances of violations, concerning two discrete regulations, of the GCA found in the May 2023 inspection that ATF had reason to believe were willful. Pretrial Order,

Doc. 55, Stips. vi, vii.

16.     The Notice to Revoke or Suspend License and/or Impose a Civil Fine included three instances of transferring a firearm to an unlicensed person without first contacting NICS in violation of 27 C.F.R. § 478.102 and two instances of failure to timely report the multiple sales of handguns in violation of 27 C.F.R. § 478.126a. Pretrial Order, Doc. 55, Stip. vii.

17.     Kull Auction disputed the willfulness of the above-referenced violations but acknowledged that the violations occurred. Pretrial Order, Doc. 55, Stip. xxii.

### 27 C.F.R. § 478.102 Violations – Failure to Conduct NICS Checks

18.     Regarding the three violations of 27 C.F.R. § 478.102, a Kull Auction employee accepted out-of-state Concealed Weapon Permits ("CWPs") in lieu of conducting a NICS check on three occasions. Pretrial Order, Doc. 55, Stip. viii.

19.     On the first of the three violations of 27 C.F.R. § 478.102, on July 11, 2022, Kull Auction employee Michelle Ashton checked a box on the ATF Form 4473 verifying that, "[n]o NICS check is required because the transferee/buyer has a valid permit from the State where the transfer is to take place." Ms. Ashton also recorded that the CWP accepted was issued in Nebraska. Pretrial Order, Doc. 55, Stip. ix.

20.     Also on July 11, 2022, on the second of the three violations of 27 C.F.R. § 478.102, Ms. Ashton checked a box on the ATF Form 4473 verifying that, "[n]o NICS check is required because the transferee/buyer has a valid permit from the State where the transfer is to take place." Ms. Ashton also recorded that the CWP accepted was issued in Nebraska. Pretrial Order, Doc. 55, Stip. x.

21.     On September 16, 2022, the third of the three violations of 27 C.F.R. § 478.102, Ms. Ashton checked a box on the ATF Form 4473 verifying that, "[n]o NICS check is required

because the transferee/buyer has a valid permit from the State where the transfer is to take place." Ms. Ashton also recorded that the CWP accepted was issued in Iowa. Pretrial Order, Doc. 55, Stip. xi.

22.    Ms. Ashton is one of two employees that generally handle Kull Auction's ATF responsibilities, including completion of the ATF Form 4473 during firearms transfers. The second employee is A. Kurt Young, who is "responsible for the company's compliance with the Gun Control Act and its related regulations." Admin. Record, Doc. 35, pp. 67–68, Hr. Tr. 67:21-68:21; A. Kurt Young Decl., Doc. 6-2, ¶ 1.

23.    Mr. Kull reported that the violations of 27 C.F.R. § 478.102 occurred because "of an in-house misunderstanding of the regulations regarding concealed carry permits for this purpose" resulting from Chance Eldridge, another Kull Auction employee, conducting online research and erroneously determining that out-of-state concealed weapon permits could be accepted in lieu of conducting a NICS check. Pretrial Order, Doc. 55, Stip. xxiii.

**27 C.F.R. § 478.126a Violation – Failure to Report the Sale of Multiple Handguns**

24.    Regarding one of the violations of 27 C.F.R. § 478.126a,[2] a Kull Auction customer purchased fifteen handguns at auction and arrived at Kull Auction at approximately 7:30 p.m. on December 7, 2022, to pick up the firearms. Mr. Kull, Mr. Young, and a third Kull Auction employee were present for the transaction. Pretrial Order, Doc. 55, Stip. xiii.

25.    Although Kull Auction completed the ATF Form 4473 for the transaction, Mr. Kull stated that "it was a cold night when the employees wanted to get home," so he "made the decision to complete the [ATF Form 3310.4] and submit it the next day." Pretrial Order, Doc. 55, Stip. xiv; *see also* Daniel D. Kull Aff., Doc. 6-1, ¶ 27; Admin. Record, Doc. 35, pp. 107–09, Hr.

---

[2] After full consideration of all records and the parties' statements at the hearing, DIO Miller elected to not make any findings on the second violation of 27 C.F.R. § 478.126a. Admin. Record, Doc. 35, p. 226, Sec. 8.c.

Tr. 107:11-109:20.

26.     The Kull Auction employees forgot to submit the form the next day. Pretrial Order, Doc. 55, Stip. xv.

27.     Kull Auction did not submit the Form 3310.4 until June 1, 2023, during ATF's compliance inspection of the Kull Auction premises. Pretrial Order, Doc. 55, Stip. xvi.

28.     ATF Form 3310.4 is a one-page form. The form states that it must be submitted to ATF and the Chief Local Law Enforcement Official designated to receive the form "no later than the close of business on the day that the multiple sale or other disposition occurs." ATF Form 3310.4, p. 2, Instruction No. 7, available at https://www.atf.gov/firearms/docs/form/report-multiple-sale-or-other-disposition-pistols-and-revolvers-atf-form-33104/download (last visited Sept. 13, 2024).[3]

29.     Directly below the signature line on ATF Form 4473, ATF Form 4473 reminds licensees in bolded letters that multiple sales of handguns within five consecutive business days must be reported by the close of business. ATF Form 4473, Admin. Record, Doc. 35, p. 172.

30.     Kull Auction timely submitted ATF Form 3310.4 on twenty-two occasions during the compliance period. Pretrial Order, Doc. 55, Stip. xxvi.

**The Revocation Process**

31.     Respondent William Miller ("DIO Miller") is the Director of Industry Operations ("DIO") of the Kansas City Field Division of ATF. Pretrial Order, Doc. 55, Stip. iii.

32.     Kull Auction is within the jurisdiction of the Kansas City Field Division and DIO Miller has authority over revocation of licenses for the Kansas City Field Division. Pretrial

---

[3] The contents of ATF Form 3310.4 are subject to judicial notice because ATF Form 3310.4 is publicly available on ATF's website. *See N.M. ex rel. Balderas v. U.S. Nuclear Regul. Comm'n*, 59 F.4th 1112, 1120 n.5 (10th Cir. 2023) (concluding that the contents of an environmental report were subject to judicial notice because the report was publicly available on the Nuclear Regulatory Commission's website) (citations omitted).

Order, Doc. 55, Stip. iv.

33.     On July 20, 2023, Kull Auction timely requested a hearing on the Notice to Revoke, which was set for September 26, 2023. Pretrial Order, Doc. 55, Stip. xvii.

34.     DIO Miller presided over the hearing for the Notice to Revoke on September 26, 2023. DIO Miller received evidence from ATF and Kull Auction at the hearing. Pretrial Order, Doc. 55, Stip. xviii.

35.     Kull Auction was represented by Philip Milks, Esq. Pretrial Order, Doc. 55, Stip. xix.

36.     On November 21, 2023, DIO Miller issued a Final Notice of Denial of Application, Revocation, Suspension and/or Fine of Firearms License, ATF E-Form 5300.13 ("Final Notice"), revoking Kull Auction's FFL. Pretrial Order, Doc. 55, Stip. xxiv.

37.     In the Final Notice, DIO Miller concluded that all three instances of transferring a firearm to an unlicensed person without first contacting NICS in violation of 27 C.F.R. § 478.102 were willful and that one instance of failure to timely report the multiple sales of handguns in violation of 27 C.F.R. § 478.126a was willful. Pretrial Order, Doc. 55, Stip. xxv.

## ATF Enhanced Regulatory Enforcement Policy

38.     ATF Order 5370.1E was an internal ATF policy, enacted January 28, 2022, which set "forth the general policy guidelines for administrative action recommendations for FFLs." Exhibit 1, ATF Order 5370.1E, p. 1.

39.     ATF Order 5370.1E(4)(b) provides that "[t]his policy is for internal guidance only and is law enforcement sensitive. It is not intended—and should not be construed—to create any right or benefit, substantive or procedural, enforceable at law by a party against the United States and its agencies, officers, or employees." Exhibit 1, ATF Order 5370.1E, p. 1.

40.     ATF Order 5370.1E(7)(a)(3) outlines five questions that ATF "should consider . . . when recommending administrative action." Exhibit 1, ATF Order 5370.1E, pp. 2–3.

41.     ATF Order 5370.1E(4)(a) provides that "[a]dministrative action is defined as a warning letter, warning conference, revocation, imposition of a civil fine, and/or suspension of a federal firearms license, including a recommendation of denial of an original or renewal application, and alternate action to revocation." Exhibit 1, ATF Order 5370.1E, p. 1.

42.     ATF Order 5370.1E does not require that a discussion of the five questions outlined in section (7)(a)(3) appear in the text or records of the administrative action. *See generally* Exhibit 1, ATF Order 5370.1E.

43.     ATF Order 5370.1E(7)(a)(4) states that ATF "has zero tolerance for willful violations that greatly affect public safety and ATF's ability to trace firearms recovered in violent crimes. Therefore, revocation is the assumed action, unless extraordinary circumstances exist" when certain enumerated violations are cited. Exhibit 1, ATF Order 5370.1E, p. 3.

44.     One of the violations warranting an assumption of revocation in ATF Order 5370.1E(7)(a)(4) is the "[f]ailure to 1) contact the National Instant Criminal Background Check System (NICS) . . . for a background check prior to transfer of a firearm," including "[a]cceptance of an invalid alternate permit or nonqualifying alternative permit in lieu of NICS." Exhibit 1, ATF Order 5370.1E, p. 3.

45.     ATF Order 5370.1E(7)(e)(6) further identifies five items that "merit revocation of the license if committed willfully unless extraordinary circumstances exist," including "[f]ailure to conduct a NICS check or obtain alternative permit," which includes "[a]cceptance of an invalid alternate permit or nonqualifying alternative permit in lieu of NICS." Exhibit 1, ATF

Order 5370.1E, p. 7.

46.     ATF Order 5370.1E(7)(e)(6) further provides that "[i]n extraordinary circumstances, an alternative recommendation may be made," but "[t]he fact that there is only a single violation of subsections (a)-(e) below does not, in and of itself, constitute extraordinary circumstances and will not be an acceptable reason for an alternate recommendation." Exhibit 1, ATF Order 5370.1E, p. 7.

47.     ATF Order 5370.1E does not require a determination regarding the presence or absence of extraordinary circumstances in the text of the administrative action. *See generally* Exhibit 1, ATF Order 5370.1E.

## ARGUMENTS AND AUTHORITIES

### I.     Summary Judgment Standard

Summary judgment is proper under the Federal Rules of Civil Procedure when the moving party demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" when it is necessary to resolve a claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). Disputes over material facts are "genuine" if the competing evidence would permit a reasonable jury to decide the issue in either party's favor. *Id.* To determine whether a genuine issue of fact exists, the Court views all evidence, and draws all reasonable inferences, in the light most favorable to the nonmoving party. *See Allen v. Muskogee, Okla.*, 119 F.3d 837, 839–40 (10th Cir. 1997). But the nonmoving party cannot create a genuine factual dispute by making allegations that are purely conclusory or unsupported by the record. *Adler*, 144 F.3d at 671–72.

In a case where the moving party does not bear the burden of persuasion at trial, the summary judgment rules require that party to show the absence of any genuine issue of material

fact and entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, (1986); *see also Pelt v. Utah*, 539 F.3d 1271, 1280 (10th Cir. 2008). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial as to dispositive matters. *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990).

## II.      The Gun Control Act

Congress enacted the GCA to help prevent prohibited individuals from obtaining firearms. *Abramski v. United States*, 573 U.S. 169, 181 (2014); *see also CEW Props., Inc. v. U.S. DOJ*, 979 F.3d 1271, 1273 (10th Cir. 2020). The GCA requires anyone "engage[d] in the business of importing, manufacturing, or dealing in firearms" to obtain an FFL and to maintain "records of importation, production, shipment, receipt, sale, or other disposition of firearms at his place of business for such period, and in such form, as the Attorney General may by regulations prescribe." 18 U.S.C. § 923(a), (g)(1)(A). The GCA requires "strict compliance" in order to receive and maintain an FFL. *Williamson Gun & Archery, LLC v. Rogers*, No. 2:23-cv-00524, 2024 WL 3330611, at *2 (S.D. W.Va. Jul. 8, 2024) (*citing RSM, Inc. v. Herbert*, 466 F.3d 316, 323–24 (4th Cir. 2006)). If a licensee "has willfully violated any provision" of the GCA or rules promulgated thereunder, ATF may revoke the FFL. 18 U.S.C. § 923(e); *see also* 28 C.F.R. § 0.130 (delegating authority to ATF).[4]

The Tenth Circuit has explained that the willfulness requirement of 18 U.S.C. § 923(e) is met by "plain indifference toward known legal obligations." *Borchardt Rifle Corp. v. Cook*, 684 F.3d 1037, 1042 (10th Cir. 2012). For a violation to meet the willful standard, the licensee "must

---

[4] Revocation occurs via a series of steps. First, ATF issues a written notice to the licensee stating the grounds for revocation. 18 U.S.C. § 923(f)(1). Upon request from the licensee, ATF must hold a hearing to review the revocation. 18 U.S.C. § 923(f)(2). If after hearing ATF does not reverse its decision to revoke the license, ATF gives notice of the final revocation decision to the licensee. 18 U.S.C. § 923(f)(3).

have (1) known and (2) been plainly indifferent to its legal obligations." *CEW Props.*, 979 F.3d at 1279. Critically, ATF can "revoke a license based on one willful violation alone." *Id.* at 1273 (citations omitted); *see also Kull Auction & Real Est. Co. v. Miller*, No. 23-CV-04117-TC-BGS, 2024 WL 230928, at *4 (D. Kan. Jan. 22, 2024) (noting "just one willful violation is sufficient to support revocation").

Once a licensee receives a final revocation decision, the licensee has sixty days to file a petition for de novo judicial review with the United States district court. 18 U.S.C. § 923(f)(3). "Courts have interpreted the de novo standard of review under 18 U.S.C. § 923(f) narrowly." *CEW Props.*, 979 F.3d at 1277 (citation omitted). "Although § 923(f)(3) directs district courts to conduct 'de novo judicial review' of revocation decisions, it confines the inquiry to whether ATF was 'not authorized to . . . revoke the license.'" *Id.* (citing 18 U.S.C. § 923(f)(3)); *Borchardt*, 684 F.3d at 1042). In other words, "the court may grant relief only if it 'decides that the Attorney General was not authorized to . . . revoke the license.'" *Borchardt*, 684 F.3d at 1042 (quoting 18 U.S.C. § 923(e)); *see also Heartland Outdoor, Inc. v. Miller*, No. 23-1182-DDC-BGS, 2023 WL 6376751, at *5 (D. Kan. Sept. 29, 2023) ("This standard doesn't permit district courts to decide whether they would've reached the same conclusion as ATF or exercised discretion in the same fashion as the ATF did during the administrative proceeding."); *Wilson Gun Works & Design, LLC v. Albro*, 2023 WL 5516307, at *4 (W.D.N.C. Aug. 25, 2023) (ruling in favor of the ATF, even though the court viewed the revocation as "a heavy-handed punishment").

In reviewing revocations of FFLs, the Tenth Circuit has recognized that a showing of willfulness by a preponderance of the evidence "appears to be the proper standard" and that "the authorities suggest the preponderance standard applies." *CEW Props.*, 979 F.3d at 1278, n.10; *see also Kull Auction*, 2024 WL 230928, at *4 ("While this may be an open question in the Tenth

Circuit, the most recent case to address the issue, *CEW Properties*, suggested that a preponderance of the evidence standard applies."). Thus, to establish that ATF was not authorized to revoke its license, Kull Auction must prove, by a preponderance of the evidence, that none of its cited violations of the GCA were willful. *See Kull Auction*, 2024 WL 230928, at *4.

### III. Respondent was authorized to revoke Kull Auction's FFL because the undisputed facts establish at least one willful violation of the GCA.

Kull Auction does not dispute that it committed the violations identified by ATF in its May 2023 inspection. SOF ¶ 17. Kull Auction instead challenges DIO Miller's conclusion that the violations were willful. *Id.* Because Kull Auction does not contest the cited violations, the sole issue before the Court is whether at least one of Kull Auction's violations of the GCA was willful.

Here, it is undisputed that Daniel D. Kull, Kull's responsible person, "made the decision" not to timely submit ATF Form 3310.4, despite having made a sale of fifteen handguns at one time, in violation of 27 C.F.R. § 478.126a. SOF ¶¶ 24–25. This decision by Mr. Kull, after previously receiving warnings for failure to comply with 27 C.F.R. § 478.126a and opportunities for education and discussion regarding the requirement, clearly represents a plain indifference to Kull Auction's known GCA obligations. SOF ¶¶ 5–7, 10–11.

Further, Kull Auction violated its obligations under 27 C.F.R. § 478.102, by accepting out-of-state concealed weapons permits in lieu of conducting a NICS check on three occasions. SOF ¶ 18. This violation occurred despite prior warnings to Kull Auction for its failure to conduct NICS checks and despite plain language on ATF Form 4473 instructing that concealed weapon permits may be accepted in lieu of a NICS check only if the buyer "has a valid permit from the State where the transfer is to take place." SOF ¶¶ 9, 12–13, 19–21.

Although Mr. Kull's decision not to timely complete ATF Form 3310.4 alone satisfies the willfulness requirement of § 923(e), Kull Auction's repeated failures to comply with the GCA, despite warnings from ATF, further demonstrate the willfulness of its violations.

### A.      Kull admits its responsible person chose to violate 27 C.F.R. § 478.126a.

The court in *Borchardt* recognized that because willfulness is "rarely provable by direct evidence," willfulness is most often proven by circumstantial evidence. *Borchardt*, 684 F.3d at 1043 (citation omitted); *see also CEW Props*., 979 F.3d at 1279 (identifying circumstantial evidence supporting a finding of willfulness, including: (1) that the licensee received training from ATF in obtaining its FFL and during inspections, (2) the magnitude of violations, (3) periodic compliance by the licensee—showing the licensee knew how to meet its obligations, (4) the length of time the licensee had held its license, (5) statements to investigators). Here, however, there is *direct* evidence of Kull Auction's plain indifference to its legal obligations as Mr. Kull, Kull Auction's responsible person, has explicitly stated on multiple occasions that he chose to disregard the clear obligation to submit a multiple sales report by the close of business on the day the transaction occurred in favor of submitting it at some later date. SOF ¶¶ 3, 25.

The GCA specifically requires licensees to "prepare a report of multiple sales or other dispositions whenever the licensee sells or otherwise disposes of, at one time or during any five consecutive business days, two or more pistols, or revolvers, or any combination of pistols and revolvers totaling two or more, to an unlicensed person . . . on a form specified by the Attorney General and forwarded to the office specified thereon . . . not later than the close of business on the day that the multiple sale or other disposition occurs." 18 U.S.C. § 923(g)(3)(A). And GCA regulations require that licensees use ATF Form 3310.4 to fulfill that obligation. 27 C.F.R. § 478.126a. This requirement was well-known to Mr. Kull. Mr. Kull, as Kull Auction's

responsible person, signed the ATF Acknowledgement of Federal Firearms Regulations in 2005, 2006, 2007, 2011, 2013, and 2018. SOF ¶ 4. Each ATF Acknowledgement of Federal Firearms Regulations signed by Mr. Kull contained a list of regulations applicable to FFLs, including reference to 27 C.F.R. § 478.126a and ATF Form 3310.4. SOF ¶¶ 5, 7.

Moreover, ATF Form 4473—the only form required for all sales to non-licensed persons—reminds FFLs that multiple sales of handguns within five business days must be reported by the close of business. SOF ¶ 29. This reminder appears in bolded letters directly under the licensee's signature line. *Id.* Likewise, ATF Form 3310.4 identifies the reporting period as "by the close of business on the day that the multiple sale or other disposition occurs." SOF ¶ 28. In addition to the clear mandates in the GCA, its implementing regulations, and on the relevant forms, Kull Auction was formally warned by ATF in 2007 for its failure to complete an ATF Form 3310.4 on six instances. SOF ¶¶ 10–11. The Report of Violations, signed by Mr. Kull, explicitly detailed the requirement under 27 C.F.R. § 478.126a that the report be submitted "not later than the close of business on the day that the multiple sale or other disposition occurred." SOF ¶ 10. Kull Auction also demonstrated its knowledge and ability to properly complete multiple sales reports in that it timely submitted ATF Forms 3310.4 twenty-two times during the compliance period. SOF ¶ 30; *see also CEW Props.*, 979 F.3d at 1280 ("Periodic compliance—that is, a licensee's occasional adherence to regulatory obligations—can support a finding of willfulness.").

Despite this knowledge, Mr. Kull has admitted that he "made the decision" not to timely complete an ATF Form 3310.4 after the sale of fifteen handguns because it was "a cold night when the employees wanted to get home." SOF ¶¶ 24–25. Thus, Mr. Kull—aware of Kull Auction's obligation to submit an ATF Form 3310.4 before the close of business—willfully

violated 27 C.F.R. § 478.126a when he "made the decision to complete [ATF Form 3310.4] and submit it the next day." SOF ¶¶ 10–11, 24–25; *Willingham Sports, Inc. v. ATF*, 348 F. Supp. 2d 1299, 1309 (S.D. Ala. 2004), *aff'd*, 415 F.3d 1274 (11th Cir. 2005) ("It is not the place of . . . any licensee to decide unilaterally which federal firearms regulations are sufficiently importunate to follow and which may be disregarded as 'nit-picky.' Nothing in the Gun Control Act or the accompanying regulations exonerates licensees from complying with 'nit-picky' rules or trammels the ATF's authority to revoke licenses for willful violations of 'nit-picky' rules.").

Because an FFL may be revoked upon the finding of a single willful violation of the GCA, ATF was authorized to revoke Kull Auction's FFL for this violation alone. *CEW Props.*, 979 F.3d at 1273; *see also Kull Auction*, 2024 WL 230928, at *4 (noting "just one willful violation is sufficient to support revocation"); *Heartland Outdoor*, 2023 WL 6376751, at *5 (noting "just one willful violation is enough for ATF to revoke an FFL"); *Augustson v. Holder*, 728 F. Supp. 2d 1279, 1286 (D.N.M. 2010) ("Because it is within the ATF's discretion to revoke a license for even a *single* willful violation of the GCA, seven violations is more than sufficient to warrant revocation."); *Appalachian Res. Dev. Corp. v. McCabe*, 387 F.3d 461, 464 (6th Cir. 2004) ("Furthermore, it has been recognized that a single violation of the GCA is a sufficient basis for denying an application or revoking a firearms dealer's license."); *Trader Vic's Ltd v. O'Neil*, 169 F. Supp. 2d 957, 963 (N.D. Ind. 2001) (same); *Willingham Sports*, 348 F. Supp. 2d at 1309 n.14 ("[T]he gravity of the policy objectives of the Gun Control Act, from both a law enforcement standpoint and a safety standpoint, strongly militates in favor of allowing the ATF to insist on total compliance as a condition of retaining the privilege of dealing in firearms.").

**B.      Despite prior warnings from ATF, Kull Auction disregarded the clearly stated requirements of 27 C.F.R. § 478.102.**

In addition to the direct evidence of willfulness with respect to Kull Auction's violation of 27 C.F.R. § 478.126a, Kull Auction's repeated violations of 27 C.F.R. § 478.102 evidence its plain indifference to its obligations under the GCA. Section 478.102 provides that before selling, delivering, or transferring a firearm to any person who is not licensed, FFLs must either (a) contact NICS to receive a background check or (b) confirm a qualifying exception to the requirement to contact NICS applies. 27 C.F.R. § 478.102(a)(1), (d). In 2011, Kull Auction was cited by ATF for its failure to contact NICS on two occasions in violation of 27 C.F.R. § 478.102. SOF ¶ 12. As a result of these violations, ATF issued a warning letter to Kull Auction stating that future violations could be deemed willful and result in revocation and requiring Mr. Kull, as Kull Auction's responsible person, to attend a meeting with ATF to discuss the violations. SOF ¶¶ 12–13. The warning letter provided that "[t]he agenda for the meeting will include a discussion of the reasons for the violations, a review of the legal requirements, and a discussion of steps to be taken by you to ensure future compliance." SOF ¶ 14.

Despite this warning and opportunity to review the relevant legal requirements, Kull Auction admits that it again failed to conduct NICS checks before completing firearms transfers on three occasions in violation of 27 C.F.R. § 478.102. SOF ¶¶ 16–17. Instead, Kull Auction accepted out-of-state concealed weapon permits in lieu of conducting a NICS check for each of the transfers. SOF ¶ 18. Although 27 C.F.R. § 478.102(d)(1) allows licensees to transfer a firearm without first contacting NICS when the transferee has a valid concealed weapon permit issued by the state in which the transfer is to take place, it does not permit acceptance of out-of-state concealed weapons permits in lieu of a NICS check. 27 C.F.R. § 478.102(d); *see also* Open

Letter to All Kansas Federal Firearm Licensees, Admin. Record, Doc. 35, pp. 212–13; ATF Form 4473, Admin. Record, Doc. 35, p. 172, Item 29.

Kull Auction employee Michelle Ashton committed all three instances of violation of 27 C.F.R. § 478.102, with two of the instances occurring in July 2022 and one instance occurring in September 2022. SOF ¶¶ 19–21. Ms. Ashton was one of two employees generally assigned to handle Kull Auction's ATF responsibilities, including completion of ATF Form 4473 during firearms transfers. SOF ¶ 22. On each of the three occasions, Ms. Ashton checked a box on ATF Form 4473 verifying that, "[n]o NICS check is required because the transferee/buyer *has a valid permit from the State where the transfer is to take place*" before also recording that the accepted concealed weapons permits were issued out-of-state. SOF ¶¶ 19–21 (emphasis added).

Mr. Kull reported that these violations occurred because "of an in-house misunderstanding of the regulations regarding concealed carry permits for this purpose" resulting from Chance Eldridge, a Kull Auction employee, conducting online research and determining that out-of-state concealed weapon permits could be accepted in lieu of conducting a NICS check. SOF ¶ 23. Thus, Kull Auction—well aware of the necessity of NICS checks and on notice that future violations of 27 C.F.R. § 478.102 could be considered willful—still failed to properly train its employees on the importance of conducting NICS checks—including one of two employees completing firearms transfers on a regular basis. Had Kull Auction's employees been adequately trained or had Ms. Ashton or Mr. Eldridge simply read and then followed the instruction on the ATF Form 4473 before completing it, these repeated violations would not have occurred.

Kull Auction's repeated failure to comply with its duty to conduct NICS checks and its inadequate training of its employees regarding both the relevant regulations and the importance

of properly completing ATF Form 4473 evidence a plain indifference to its obligations under the GCA. "[W]here a licensee's employees are permitted to come to their own legal conclusions about the requirements of the law, a plausible inference is that there was a lack of or insufficient training which suggests plain indifference to legal requirements." *Kull Auction*, 2024 WL 230928, at *3 (citing *Armalite, Inc. v. Lambert*, 544 F.3d 644, 649–50 (6th Cir. 2008)); *see also Fairmont Cash Mgmt., L.L.C. v. James*, 858 F.3d 356, 363 (5th Cir. 2017) (holding that an FFL was "vicariously liable for the illegal acts of its employees regardless whether it approved of them"); *Augustson*, 728 F. Supp. 2d at 1286 (rejecting a petitioner's argument that he should not be held responsible for recordkeeping errors committed by his wife); *Fin & Feather Sport Shop, Inc. v. U.S. Treasury Dep't*, 481 F. Supp. 800, 805–06 (D. Neb. 1979) (rejecting licensee's attempt to defend against the willfulness of its violations by placing blame on an employee). ATF was therefore authorized to revoke Kull Auction's license.

## IV.  ATF Order 5370.1E[5] has no bearing on the question of whether ATF's revocation of Kull Auction's FFL was authorized under 18 U.S.C. § 923(e).

Respondent is also entitled to summary judgment on Kull Auction's claim that Respondent was not authorized to revoke Kull Auction's license because Respondent purportedly failed to follow ATF Order 5370.1E. *See* Pretrial Order, Doc. 55, Sec. 4.a.i. First, 18 U.S.C. § 923(e) provides that the Attorney General is authorized to "revoke any license issued under this section if the holder of such license has willfully violated any provision of [the GCA]" and the undisputed facts establish that Kull Auction committed willful violations of the GCA. Thus, Respondent was authorized to revoke Kull Auction's license under § 923(e) and ATF internal policy has no bearing on the decision before the Court. Second, Kull Auction's

---

[5] Although ATF Order 5370.1E was superseded by ATF Order 5370.1F prior to the May 2023 inspection of Kull Auction, the document did not substantively change as to the portions referenced by Kull Auction in the Pretrial Order. Respondent will therefore continue to reference ATF Order 5370.1E per Kull Auction's contentions.

contentions regarding Respondent's purported failure to follow ATF Order 5370.1E contradict and mischaracterize the plain language of ATF Order 5370.1E.

A.     **18 U.S.C. § 923(f)(3) sets the standard for authorization of a revocation; ATF Order 5370.1E does not change the legal requirement.**

The statute under which this case was brought, 18 U.S.C. § 923(f)(3), permits the Court to "grant relief only if it 'decides that the Attorney General was not authorized to . . . revoke the license.'" *Borchardt*, 684 F.3d at 1042. As addressed above, the Attorney General is authorized to "revoke any license issued under this section if the holder of such license has willfully violated any provision of [the GCA]." 18 U.S.C. § 923(e). Thus, where "under a *de novo* review the GCA permitted ATF's revocation of [an] FFL, there is no need to review ATF's internal policies and procedures to determine whether ATF abused its discretion when revoking [the] FFL." *Taylor v. Hughes*, 548 F. App'x 822, 826 (3d Cir. 2013); *see also Weaver v. Harris*, 486 F. App'x 503, 505–06 (5th Cir. 2012) (finding that the district court did not abuse its discretion in concluding that ATF internal policy materials were "completely unrelated to the issue of [a licensee's] willfulness"); *Morehouse Enters., LLC v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, No. 3:23-CV-129, 2024 WL 708954, at *9 (D.N.D. Jan. 2, 2024) ("[T]he Attorney General is 'authorized' to revoke an FFL's license for a willful violation of the GCA, and an internal decision on when to exercise that authority changes neither the obligations of FFLs nor the power of the Attorney General."); *Gossard v. Fronczak*, 206 F. Supp. 3d 1053, 1060–61 (D. Md. 2016) (concluding that "evidence of ATF's internal policies would not create a genuine issue of material fact" where the plaintiff challenged ATF's denial of his application for an FFL under 18 U.S.C. § 923(f)(3)), *aff'd Gossard v. Fronczak*, 701 F. App'x 266 (4th Cir. 2017).

Further, "[w]hen an agency decides to seek enforcement actions (or declines to seek enforcement actions), it is entitled to the same type of discretion that a prosecutor is afforded in

bringing (or not bringing) criminal charges." *Greer v. Chao*, 492 F.3d 962, 964 (8th Cir. 2007) (citing *Heckler v. Chaney*, 470 U.S. 821, 831 (1985)); *see also United States v. Texas*, 599 U.S. 670, 679–80 (2023) ("[T]he Executive Branch must prioritize its enforcement efforts. That is because the Executive Branch . . . must constantly react and adjust to the ever-shifting public-safety and public-welfare needs of the American people.") (internal citation omitted).

Here, ATF Order 5370.1E is merely internal guidance documenting the mechanics of review and allocation of ATF resources. *See Morehouse Enters., LLC*, 2024 WL 708954, at *8 ("Most of [ATF Order 5370.1E] concerns enforcement priorities."). Because "the Attorney General is 'authorized' to revoke an FFL's license for a willful violation of the GCA, [] an internal decision on when to exercise that authority changes neither the obligations of FFLs nor the power of the Attorney General." *Morehouse Enters., LLC*, 2024 WL 708954, at *9; *see also Texas*, 599 U.S. at 678 (2023) ("Under Article II, the Executive Branch possesses authority to decide 'how to prioritize and how aggressively to pursue legal actions against defendants who violate the law.'"); *Heckler*, 470 U.S. at 831–32 (finding agencies "far better equipped than the courts to deal with the many variables involved in the proper ordering of its priorities" because such decisions require "a complicated balancing of a number of factors which are peculiarly within [the Executive's] expertise").

The undisputed facts establish that Kull Auction willfully violated the GCA by repeatedly failing to conduct NICS checks and by choosing not to comply with its obligation to timely file ATF Form 3310.4. ATF was therefore authorized to revoke Kull Auction's license under 18 U.S.C. § 923(e). Nothing in ATF Order 5370.1E changes that legal conclusion. *See Armalite*, 544 F.3d at 647 (holding that "[b]ecause the government may revoke a license if the licensee willfully violates 'any' provision of the GCA . . . summary judgment is therefore appropriate if

no genuine issue of material fact exists about whether [the licensee] willfully violated an applicable statutory or regulatory provision).

**B.     Kull Auction's contentions contradict and mischaracterize the plain language of ATF Order 5370.1E.**

If the Court is not persuaded by prior ATF decisions (*Taylor* and *Morehouse*) or Supreme Court precedent (*Heckler* and *Texas*), Kull Auction's claim regarding ATF policy still fails because Kull Auction has not accurately described ATF Order 5370.1E as evidenced by the plain text of the policy.

For example, Kull Auction asserts that "ATF Order 5370.1E specifies five factors that Respondent *must* consider when recommending administrative action, including revocation," but the plain language of the policy provides five questions that ATF "*should* consider . . . when recommending administrative action" (i.e., when recommending that an FFL receive a warning letter, that an FFL be required to attend a warning conference, or that an FFL have its license revoked). *Compare* Pretrial Order, Doc. 55, Kull Auction's Factual Contentions, p. 6 (emphasis added) *with* SOF ¶¶ 40–41 (emphasis added). Similarly, Kull Auction contends that "[t]he ATF's Order makes clear that a Director of Industry Operations *must* take into account any extraordinary circumstances that may exist" but, again, ATF Order 5370.1E provides that "in extraordinary circumstances, an alternative recommendation *may* be made." *Compare* Pretrial Order, Doc. 55, Kull Auction's Factual Contentions, p. 6 (emphasis added) *with* SOF ¶ 46 (emphasis added). Thus, Kull Auction's claim that Respondent failed to follow ATF Order 5370.1E in revoking Kull Auction's FFL hinges on an interpretation of ATF Order 5370.1E that directly contradicts the plain language of the policy.

Kull Auction's contentions also ignore ATF Order 5370.1E's focus on protecting communities, specifically regarding "zero tolerance for willful violations that greatly affect

public safety" and the guidance that "revocation is the assumed action . . . when certain enumerated violations are cited," including the willful "[a]cceptance of an invalid alternate permit or nonqualifying alternative permit in lieu of NICS." *Compare* Pretrial Order, Doc. 55, Kull Auction's Factual Contentions, p. 6 (emphasis added) *with* SOF ¶¶ 43–45.

In sum, Kull Auction's claim that Respondent failed to follow ATF Order 5370.1E is irrelevant to the Court's inquiry and is a transparent attempt to distract from the undisputed evidence that Kull Auction willfully violated the GCA. Further, Kull Auction's mischaracterization of the language within the policy highlights its attempt to eschew the willfulness standard plainly established by Section 923(e). As such, the Court should find that ATF was authorized to revoke Kull Auction's license.

## <u>CONCLUSION</u>

There is direct evidence that Kull Auction willfully violated the GCA by deciding not to timely complete and submit ATF Form 3310.4. Further, Kull Auction knew of its duty to conduct NICS checks before completing firearms transfers and had been warned for its failure to do so at a prior inspection. Despite this knowledge, Kull Auction employees were inadequately trained regarding the necessity of NICS checks, resulting in three failures to conduct NICS checks in a two-month period. These violations were the direct result of Kull Auction's plain indifference to its obligations under the GCA. Because 18 U.S.C. § 923(e) authorizes the Attorney General to "revoke any license issued under this section if the holder of such license has willfully violated any provision of [the GCA]," Respondent respectfully requests that the Court find that ATF was authorized to revoke Kull Auction's license and enter judgment in his favor.

Respectfully submitted,

KATE E. BRUBACHER
United States Attorney
District of Kansas

/s/ *Audrey D. Koehler*
Audrey D. Koehler, KS #28271
Sarah Burch Macke, KS #25948
Assistant United States Attorneys
United States Attorney's Office
District of Kansas
301 N. Main, Suite 1200
Wichita, Kansas 67226
PH: (316) 269-6481
FX: (316) 269-6484
Email: audrey.koehler@usdoj.gov
Email: sarah.macke@usdoj.gov
Attorneys for the United States

## CERTIFICATE OF SERVICE

I certify that on September 13, 2024, the foregoing was electronically filed with the Court using the CM/ECF system, which will send a notice of electronic filing to all CM/ECF participants.

/s/ *Audrey D. Koehler*
Audrey D. Koehler