IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| KULL AUCTION & REAL ESTATE CO., INC., <br><br> Petitioner, <br><br> vs. <br><br> WILLIAM MILLER, Director of Industry Operations, Kansas City Field Division Bureau of Alcohol, Tobacco, Firearms & Explosives, <br><br> Respondent. | Case No. 5:23-cv-04117-TC-BGS |

**RESPONDENT'S MOTION TO EXCLUDE EXPERT TESTIMONY OF ANDREW GRAHAM AND MEMORANDUM IN SUPPORT**

The United States, on behalf of Respondent William J. Miller, Kansas City Field Division Director, Industry Operations, Bureau of Alcohol, Tobacco, Firearms and Explosives ("DIO Miller or ATF"), by and through United States Attorney for the District of Kansas Kate E. Brubacher and Assistant United States Attorneys for the District of Kansas Audrey D. Koehler and Sarah Burch Macke, moves the Court to exclude the expert testimony of Petitioner's expert witness, Andrew Graham, pursuant Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

**INTRODUCTION**

Petitioner Kull Auction & Real Estate Co., Inc. ("Kull Auction") brings this action seeking *de novo* judicial review of the ATF's revocation of its Federal firearms license under Section 923(f)(3) of the Gun Control Act ("GCA"). Pursuant to 18 U.S.C. § 923(e), ATF may revoke a license if the licensee "has willfully violated any provision" of the GCA or rules promulgated

thereunder. *See also* 28 C.F.R. § 0.130 (delegating authority to ATF). In support of its position that ATF was not authorized to revoke its license, Kull Auction seeks to present the testimony of Andrew Graham, Chief Executive Officer of Graham Industry Advisors. Because Mr. Graham's testimony is neither relevant nor reliable, the Court should exclude Mr. Graham's testimony.

## STATEMENT OF FACTS

### I. Factual History

Kull Auction received its FFL in 2005. Pretrial Order, Doc. 55, Stip. i. In May 2023, ATF initiated a compliance inspection of Kull Auction. Pretrial Order, Doc. 55, Stips. v, xxvii. On July 7, 2023, ATF issued a Notice to Revoke or Suspend License and/or Impose a Civil Fine to Kull Auction identifying five violations of the GCA found in the May 2023 inspection that ATF considered to be willful. Pretrial Order, Doc. 55, Stip. vi. These violations included three instances of transferring a firearm to an unlicensed person without first contacting the National Instant Criminal Background Check System ("NICS") in violation of 27 C.F.R. § 478.102 and two instances of failure to timely report the multiple sales of handguns in violation of 27 C.F.R. § 478.126a—violations for which Kull Auction had been previously cited and warned in 2007 and 2011. Pretrial Order, Doc. 55, Stips. vii; xxviii, xxx.

Kull Auction timely requested a hearing on the Notice to Revoke, which was set for September 26, 2023. Pretrial Order, Doc. 55, Stip. xvii. At the hearing, DIO Miller received evidence from ATF and Kull Auction. Pretrial Order, Doc. 55, Stip. xviii. Kull Auction disputed the willfulness of the above-referenced violations but acknowledged that the violations occurred. Pretrial Order, Doc. 55, Stip. xxii. After the hearing, DIO Miller concluded that all three instances of transferring a firearm to an unlicensed person without first contacting NICS in violation of 27 C.F.R. § 478.102 were willful and that one instance of failure to timely report the multiple sales

of handguns in violation of 27 C.F.R. § 478.126a was willful. Pretrial Order, Doc. 55, Stip. xxv. DIO Miller issued a Final Notice of Revocation of Firearms License on November 21, 2023. Pretrial Order, Doc. 55, Stip. xxiv.

## II.   Mr. Graham's Expert Report

Kull Auction has retained Andrew Graham, Chief Executive Officer of Graham Industry Advisors, to testify as an expert in the present matter. Mr. Graham has been hired to offer his opinion that DIO Miller "failed to properly apply existing ATF policy when making its determination to revoke Kull Auction's FFL." Primarily, Mr. Graham opines that (1) Kull Auction's operations do not present a public safety risk, and (2) extraordinary circumstances exist which warranted a lesser action than revocation. The facts and data considered by Mr. Graham in forming his opinions include (1) ATF Order 5370.1E,[1] (2) the multiple sale summary form related to one of Kull Auction's violations of 27 C.F.R. § 478.126a, (3) the administrative record of the case, and (4) an ATF Report of Compliance Inspection relating to another Federal firearms licensee ("FFL"), Fairburn Pawn Inc.

Mr. Graham had a thirty-seven-year career in various positions at ATF before retiring in December 2022. Mr. Graham states that he is "familiar with the Administrative Action Policy and Zero Tolerance Policy enhancement through [his] oversight duties as Deputy Assistant Director over Industry Operations (Headquarters, Washington, D.C., 2014-2020) and Director of Industry Operations (Denver Field Division 2006-2014)." Exhibit 1, Expert Report of Andrew Graham, p. 9. Although ATF has maintained its Administrative Action Policy in accordance with the

---

[1] Although Mr. Graham states that ATF Order 5370.1E/the Administrative Action Policy is also known as the "Zero Tolerance Policy," it is not referred to that way within ATF. As such, Respondent will refer to the policy as ATF Order 5370.1E. Additionally, ATF Order 5370.1E was superseded by ATF Order 5370.1F prior to the May 2023 inspection of Kull Auction. Because the document did not substantively change as to the portions referenced by Mr. Graham in his Expert Report, Respondent will continue to reference ATF Order 5370.1E per Kull Auction's contentions.

3

objectives of the Executive branch of the Federal Government since 2003, the concept of the "Zero Tolerance Policy," properly referred to as the "Enhanced Regulatory Enforcement Policy," was first announced on June 23, 2021—a full year after Mr. Graham's departure from Industry Operations in May 2020. *Compare* Fact Sheet: Biden-Harris Administration Announces Comprehensive Strategy to Prevent and Respond to Gun Crime and Ensure Public Safety, https://www.whitehouse.gov/briefing-room/statements-releases/2021/06/23/fact-sheet-biden-harris-administration-announces-comprehensive-strategy-to-prevent-and-respond-to-gun-crime-and-ensure-public-safety/ (last visited Sept. 13, 2024) ("Today, the Justice Department is announcing a new policy to underscore zero tolerance for willful violations of the law by federally licensed firearms dealers that put public safety at risk.") *with* Exhibit 1, Expert Report of Andrew Graham, p. 1 ("I served six years as the Deputy Assistant Director, Industry Operations, Field Operations, from August 2014 – May 2020."). Similarly, ATF's Administrative Action Policy was updated via ATF Order 5370.1E on January 28, 2022. Exhibit 2, ATF Order 5370.1E.

Because both of these events occurred after Mr. Graham's tenure in Industry Operations ended, Mr. Graham's representation that he is "familiar with the Administrative Action Policy and Zero Tolerance Policy enhancement through [his] oversight duties as Deputy Assistant Director over Industry Operations (Headquarters, Washington, D.C., 2014-2020) and Director of Industry Operations (Denver Field Division 2006-2014)" is simply inaccurate. As such, Mr. Graham fails to offer unique insight or technical knowledge as to ATF Order 5370.1E or the role of extraordinary circumstances within the policy.

Mr. Graham's report does not identify any qualifications arising after his work at ATF. Mr. Graham has not been published by any third party in at least the last ten years, nor has he offered expert testimony by deposition or trial in at least the last four years.

**ARGUMENT**

The admissibility of expert testimony is guided by Federal Rule of Evidence 702. *See Roe v. FCA US LLC*, 42 F.4th 1175, 1180 (10th Cir. 2022) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993)). To fulfill its gatekeeping role, a trial court must ensure that the expert is qualified and that his or her testimony is both reliable and relevant. *Id.* "Rule 702 requires an expert witness to be qualified by 'knowledge, skill, experience, training, or education . . . .'" *Tudor v. Se. Okla. State Univ.*, 13 F.4th 1019, 1029 (10th Cir. 2021). "The reliability inquiry asks whether the methodology employed by an expert is valid—that is, whether it is based on sufficient data, sound methods, and the facts of the case." *Roe*, 42 F.4th at 1180–81 (citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999)). Testimony is relevant if it "help[s] the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a); *Delsa Brooke Sanderson v. Wyo. Highway Patrol*, 976 F.3d 1164, 1172 (10th Cir. 2020). The proponent of the expert testimony bears the burden of establishing its admissibility by a preponderance of the evidence. *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (citing Fed. R. Evid. 702 advisory committee's note (2000)).

Here, Mr. Graham's proffered testimony is (1) not relevant to the question before the trier of fact—whether Kull Auction willfully violated a provision of the GCA; (2) not necessary to help the trier of fact understand a fact in issue; and (3) not reliable in that it is not based on sufficient data, sound methods, or the facts of the case.

**I.   Because the sole issue before the Court is whether Kull Auction willfully violated the GCA, Mr. Graham's testimony regarding ATF Order 5370.1E will not help the trier of fact to understand the evidence or to determine a fact in issue.**

Congress enacted the GCA to help prevent prohibited individuals from obtaining firearms. *Abramski v. United States*, 573 U.S. 169, 181 (2014); *CEW Props., Inc. v. U.S. DOJ*, 979 F.3d

1271, 1273 (10th Cir. 2020). The GCA requires anyone "engage[d] in the business of importing, manufacturing, or dealing in firearms" to obtain a license and to maintain "records of importation, production, shipment, receipt, sale, or other disposition of firearms at his place of business for such period, and in such form, as the Attorney General may by regulations prescribe." 18 U.S.C. § 923(a), (g)(1)(A). If an FFL "has willfully violated any provision" of the GCA or rules promulgated thereunder, ATF may revoke the license. *Id.* § 923(e); *see also* 28 C.F.R. § 0.130 (delegating authority to ATF). Critically, ATF can "revoke a license based on one willful violation alone." *CEW Props.*, 979 F.3d at 1273; *see also Kull Auction & Real Est. Co. v. Miller*, No. 23-CV-04117-TC-BGS, 2024 WL 230928, at *4 (D. Kan. Jan. 22, 2024) (noting "just one willful violation is sufficient to support revocation"); *Heartland Outdoor, Inc. v. Miller*, No. 23-1182-DDC-BGS, 2023 WL 6376751, at *5 (D. Kan. Sept. 29, 2023) (same).

Once a licensee receives a final revocation decision, the licensee has sixty days to file a petition for de novo judicial review with the United States district court. 18 U.S.C. § 923(f)(3). "Courts have interpreted the de novo standard of review under 18 U.S.C. § 923(f) narrowly." *CEW Props.*, 979 F.3d at 1277 (citation omitted). "Although § 923(f)(3) directs district courts to conduct 'de novo judicial review' of revocation decisions, it confines the inquiry to whether ATF was 'not authorized to . . . revoke the license.'" *Id*. (citing 18 U.S.C. § 923(f)(3); *Borchardt Rifle Corp. v. Cook*, 684 F.3d 1037, 1042 (10th Cir. 2012)). In other words, "the court may grant relief only if it 'decides that the Attorney General was not authorized to . . . revoke the license.'" *Borchardt*, 684 F.3d at 1042 (quoting 18 U.S.C. § 923(e)); *see also Heartland Outdoor*, 2023 WL 6376751, at *5 ("This standard doesn't permit district courts to decide whether they would've reached the same conclusion as ATF or exercised discretion in the same fashion as the ATF did during the administrative proceeding.").

Thus, the sole issue in a review under 18 U.S.C. § 923(f)(3) is whether ATF was authorized to revoke Kull Auction's license. To establish that ATF was not authorized to revoke its license, Kull Auction must prove, by a preponderance of the evidence, that none of the four instances of violations relied upon in the Final Notice were willful. *See Kull Auction*, 2024 WL 230928, at *4.[2] Mr. Graham's proffered opinion that DIO Miller "failed to properly apply existing ATF policy when making its determination to revoke Kull Auction's FFL" has no bearing on that determination. *Taylor v. Hughes*, 548 F. App'x 822, 826 (3d Cir. 2013) ("[B]ecause under a *de novo* review the GCA permitted ATF's revocation of [an] FFL, there is no need to review ATF's internal policies and procedures to determine whether ATF abused its discretion when revoking [the] FFL."); *see also Weaver v. Harris*, 486 F. App'x 503, 505-06 (5th Cir. 2012) (finding that the district court did not abuse its discretion in concluding that ATF internal policy materials were "completely unrelated to the issue of [a licensee's] willfulness"); *Armalite, Inc. v. Lambert*, 544 F.3d 644, 647 (6th Cir. 2008) (holding that "[b]ecause the government may revoke a license if the licensee willfully violates 'any' provision of the GCA . . . . summary judgment is therefore appropriate if no genuine issue of material fact exists about whether [the licensee] willfully violated an applicable statutory or regulatory provision"); *Morehouse Enters., LLC v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, No. 3:23-CV-129, 2024 WL 708954, at *9 (D.N.D. Jan. 2, 2024) ("[T]he Attorney General is "authorized" to revoke an FFL's license for a willful violation of the GCA, and an internal decision on when to exercise that authority changes neither the obligations of FFLs nor the power of the Attorney General."); *Gossard v. Fronczak*, 206 F.

---

[2] In reviewing revocations of FFLs, the Tenth Circuit has recognized that a showing of willfulness by a preponderance of the evidence "appears to be the proper standard" and that "the authorities suggest the preponderance standard applies." *CEW Props.*, 979 F.3d at 1278, n.10; *see also Kull Auction*, 2024 WL 230928, at *4 ("While this may be an open question in the Tenth Circuit, the most recent case to address the issue, *CEW Properties*, suggested that a preponderance of the evidence standard applies.").

Supp. 3d 1053, 1060-61 (D. Md. 2016) (concluding that "evidence of ATF's internal policies would not create a genuine issue of material fact" where the plaintiff challenged ATF's denial of his application for an FFL under 18 U.S.C. § 923(f)(3)), *aff'd Gossard v. Fronczak*, 701 F. App'x 266 (4th Cir. 2017); *United States v. Texas*, 599 U.S. 670, 678 (2023) ("Under Article II, the Executive Branch possesses authority to decide 'how to prioritize and how aggressively to pursue legal actions against defendants who violate the law.'"). As such, Mr. Graham's proffered testimony is not relevant to the issue before the Court and should be excluded under Fed. R. Evid. 702(a).

**II.     Mr. Graham's testimony does not relate to matters requiring technical or specialized knowledge.**

In addition to Mr. Graham's testimony being irrelevant to the issue before the Court, Federal Rule of Evidence 702 requires that the proponent demonstrate that "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). Here, no scientific, technical, or other specialized knowledge is necessary for the Court to determine the issue before it: whether Kull Auction willfully violated the GCA. Even if the Court were to look to ATF policy, instead of existing case law, to determine whether ATF was authorized to revoke Kull Auction's license, specialized knowledge or skill is not necessary to determine whether Respondent followed a written policy in revoking Kull Auction's license.

Whether a situation is proper for the use of expert testimony is to be determined on the basis of assisting the trier of fact. Fed. R. Evid. 702(a). "There is no more certain test for determining when experts may be used than the common sense inquiry [of] whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject involved

in the dispute." Fed. R. Evid. 702 Advisory Committee Notes (quoting Ladd, Expert Testimony, 5 Vand. L. Rev. 414, 418 (1952)).

Here, Mr. Graham opines that "the DIO failed to properly apply existing ATF policy when making its determination to revoke Kull Auction's FFL." Exhibit 1, Expert Report of Andrew Graham, p. 12. A review of a written policy and a determination as to whether an agency followed that policy is not outside the understanding of an untrained layman—let alone outside of the purview of the Court. Moreover, since Mr. Graham left ATF Industry Operations prior to the announcement of the White House's comprehensive strategy to prevent gun violence and the effective date of ATF Order 5370.1E, he has no substantive experience working with this ATF internal policy and proffers only an opinion of a layman with no direct technical or practical expertise or experience. For that reason, Mr. Graham's testimony is not permissible under Rule 702(a).

**III.  Mr. Graham's testimony is not based on sufficient facts or data and is not the product of reliable principles and methods.**

Federal Rule of Evidence 702 also requires that the testimony proffered by the expert be reliable. "The reliability inquiry asks whether the methodology employed by an expert is valid—that is, whether it is based on sufficient data, sound methods, and the facts of the case." *Roe*, 42 F.4th at 1180–81; *see also* Fed. R. Evid. 702(b)-(c) (requiring the proponent of the expert testimony to demonstrate that the expert's "testimony is based on sufficient facts or data" and "is the product of reliable principles and methods"). Mr. Graham's report is not reliable in that he relies on facts that directly contradict the stipulated facts in the Pretrial Order and conclusions that are inconsistent with the policy he claims Respondent failed to follow.

For example, in concluding that Kull Auction's three instances of violating of 27 C.F.R. § 478.102 were the result of extraordinary circumstances meriting action other than revocation,

9

Mr. Graham states that "[t]he employee who conducted these transfers appears to have misunderstood the regulation regarding acceptance of concealed handgun permits and NICS checks and has since been terminated." Exhibit 1, Expert Report of Andrew Graham, p. 12. But the uncontroverted facts of the case establish that Kull Auction employee Michelle Ashton, completed the transfers in violation of 27 C.F.R. § 478.102 and that a different Kull Auction employee, Chance Eldridge, was blamed for the "in-house misunderstanding of the regulations." Pretrial Order, Doc. 55, Stips. ix-xi, xxiii; *see also* Admin. Record, Doc. 35, pp. 77–78, Hr. Tr. 77:20-78:11 (Q: "This one employee had apparently done online research and he had informed somebody else that was transferring the firearm--" A: "Correct."). Mr. Graham's conclusion is plainly not supported by the uncontroverted facts in this matter. Accordingly, his conclusion cannot be said to be based on sufficient facts or the product of reliable principles.

In any event, Mr. Graham summarily concludes, "ATF recognizes that employee error is an extraordinary circumstance as contemplated by the Zero Tolerance Policy." *See* Exhibit 1, Expert Report of Andrew Graham, p. 12. Yet, this statement is wholly unsupported by ATF Order 5370.1E and contradicted by case law affirming revocations in cases involving employee error. *See generally* Exhibit 2, ATF Order 5370.1E; *see also Kull Auction*, 2024 WL 230928, at *3 ("[W]here a licensee's employees are permitted to come to their own legal conclusions about the requirements of the law, a plausible inference is that there was a lack of or insufficient training which suggests plain indifference to legal requirements."); *Fairmont Cash Mgmt., L.L.C. v. James*, 858 F.3d 356, 362–63 (5th Cir. 2017) (holding that an FFL was "vicariously liable for the illegal acts of its employees regardless whether it approved of them"); *Augustson v. Holder*, 728 F. Supp. 2d 1279, 1286 (D.N.M. 2010) (rejecting a petitioner's argument that he should not be held responsible for recordkeeping errors committed by his wife); *Fin & Feather Sport Shop, Inc. v.*

*U.S. Treasury Dep't*, 481 F. Supp. 800, 805–06 (D. Neb. 1979) (rejecting FFL's attempt to defend against the willfulness of its violations by placing blame on an employee).

Mr. Graham instead supports this statement with his reference to a single, partially redacted ATF Report of Firearms Compliance Inspection in a separate case. Exhibit 1, Expert Report of Andrew Graham, pp. 12–13. After providing an incomplete summary of the facts of that case, Mr. Graham concludes that "ATF opted for no revocation because the violation arose from employee error and claim of lack of knowledge." Exhibit 1, Expert Report of Andrew Graham, p. 13. But, again, the report cited by Mr. Graham provides no such unequivocal statement and, in fact, states that "extraordinary circumstances existed due to the fact that only one lower was transferred without a NICS check and [remaining explanation redacted.]." Exhibit 3, ATF Report of Firearms Compliance Inspection - Fairburn Pawn Inc., p. 1. Mr. Graham's report provides no indication that he was involved in the Fairburn Pawn case or that he has knowledge of the redacted text or the details of ATF's investigation into Fairburn Pawn. Instead, Mr. Graham's suggestion that "ATF recognizes that employee error is an extraordinary circumstance" is based on no more than his own *ipse dixit*. *Heer v. Costco Wholesale Corp.*, 589 F. App'x 854, 861 n.4 (10th Cir. 2014) ("'Ipse dixit' is Latin for 'He, himself, said it,' and is used to identify an unsupported statement that rests solely on the authority of the person who makes it.").

Mr. Graham's opinions regarding other purportedly extraordinary circumstances are similarly unsupported by the record. Mr. Graham states:

> Other extraordinary circumstances include (1) the fact that two of the transferees in question were existing or prior customers on whom background were previously processed during prior transactions and known to Kull Auction; (2) none of the three transferees are prohibited persons; and (3) there is no indication that Kull Auction had ever been cited for or instructed by the ATF on the issue of accepting out-of-state concealed carry permits in lieu of a NICS check.

11

Exhibit 1, Expert Report of Andrew Graham, p. 13. That Mr. Graham labels these events as extraordinary does not make them so. Mr. Graham does not point to any evidence or policy language as to why these circumstances are extraordinary, but instead relies entirely on his personal value judgment. Moreover, the third purportedly "extraordinary circumstance" wholly ignores Tenth Circuit precedent holding that a single violation may be found to be a willful violation. *CEW Props.*, 979 F.3d at 1273. Thus, Mr. Graham's report is not based on sufficient data or reliable methods but, instead, his attempt to supplant his opinion for that of Respondent and the finder of fact.

Finally, Mr. Graham states that Kull Auction never sold a firearm to a prohibited person and that Kull Auction has had "only about 10 trace requests in the company's entire 19-year history," but these facts, even if somehow relevant to this particular revocation, cannot be found in any of the documents cited in Mr. Graham's facts and data section. Exhibit 1, Expert Report of Andrew Graham, p. 11. Nor does Mr. Graham provide an explanation of the data and methods he relied upon in concluding that "[t]his is an exceeding [sic] low number" of trace requests and that the "safety risk of Kull Auction's operations is also exceedingly low." Exhibit 1, Expert Report of Andrew Graham, p. 11.[3]

Mr. Graham's subsequent conclusion that "Kull Auction's continued operation poses no threat to public safety" also directly conflicts with ATF Order 5370.1E(7)(a)(4), which provides that the failure to contact NICS for a background check is a violation which "greatly affect[s] public safety," and simply represents his own risk tolerance and value judgments regarding public safety. *Compare* Exhibit 1, Expert Report of Andrew Graham, p. 11 *with* Exhibit 2, ATF Order 5370.1E(7)(a)(4), p. 3; *see also* Pretrial Order, Doc. 55, Stip. vii.

---

[3] Relatedly, Mr. Graham's suggestion that Kull Auction poses a lower safety risk than other licensees because it is an auctioneer is completely without support. *See* Exhibit 1, Expert Report of Andrew Graham, p. 10.

That conclusion also runs afoul of existing case law that states a "no harm, no foul" argument is irrelevant as to whether an FFL acted with plain indifference to its GCA obligations. *Shawano Gun & Loan, LLC v. Hughes*, No. 09-C-150, 2010 WL 3062847, at *6 (E.D. Wis. Aug. 2, 2010); *see also Article II Gun Shop, Inc. v. Gonzales*, 441 F.3d 492, 498 (7th Cir. 2006) ("The revocation provision applies regardless of whether a firearms dealer's failure to comply with the Act actually results in illegal possession or usage of a firearm or an inability to track a firearm that has been sold."); *Taylor v. Hughes*, No. 1:12-CV-138, 2012 WL 7620316, at *13 (M.D. Penn. Dec. 27, 2012), *report and recommendation adopted*, 2013 WL 752838 (M.D. Penn. Feb. 27, 2013), *aff'd*, 548 F. App'x 822 (3d Cir. 2013); *Procaccio v. Lambert*, No. 5:05-MC-0083, 2006 WL 2090166, at *5 (N.D. Ohio Jul. 25, 2006). Moreover, the suggestion that ATF may only revoke a license when the FFL actually transfers a firearm to a prohibited person, is not found in any case law.

Mr. Graham's conclusion that Respondent failed to follow ATF policy when he decided to revoke Kull Auction's license is not based on an analysis of ATF Order 5370.1E but, rather, his own ipse dixit. As such, the Court should exclude Mr. Graham's testimony on the ground that it is not based on sufficient facts or data, is not the product of reliable principles and methods, and does not reflect a reliable application of any principles and methods to the facts of the case. Fed. R. Evid. 702(b)-(d); *Roe*, 42 F.4th at 1181 ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert."); *see also Graves v. Mazda Motor Corp.*, 405 F. App'x 296, 300 (10th Cir. 2010) ("[W]e are bound . . . by our own precedent. And that precedent is clear and unequivocal that the *ipse dixit* of an expert, no matter how qualified he may be, is never enough to guarantee him a ticket to admissibility."). If it is improper for a court to substitute its conclusion

for that of ATF, *see Heartland Outdoor*, 2023 WL 6376751, at *5, it is clearly impermissible for a former agency official to substitute his conclusion for that of ATF under the guise of being an expert witness.

## CONCLUSION

For the reasons stated above, Respondent respectfully requests that the Court grant his motion to exclude the expert testimony of Andrew Graham.

Respectfully submitted,

KATE E. BRUBACHER
United States Attorney
District of Kansas

/s/ *Audrey D. Koehler*
Audrey D. Koehler, KS #28271
Sarah Burch Macke, KS #25948
Assistant United States Attorneys
United States Attorney's Office
District of Kansas
301 N. Main, Suite 1200
Wichita, Kansas 67226
PH: (316) 269-6481
FX: (316) 269-6484
Email: audrey.koehler@usdoj.gov
Email: sarah.macke@usdoj.gov
Attorneys for the United States

## CERTIFICATE OF SERVICE

I certify that on September 13, 2024, the foregoing was electronically filed with the Court using the CM/ECF system, which will send a notice of electronic filing to all CM/ECF participants.

/s/ *Audrey D. Koehler*
Audrey D. Koehler